No. 47,813

STATE OF KANSAS, *Appellee*, v. THOMAS LEO MCCORGARY, *Appellant*.

(543 P. 2d 952)

Opinion filed December 13, 1975.

*Michael E. Foster,* of Valley Center, argued the cause, and *D. Keith Anderson,* of Valley Center, was with him on the brief for the appellant.

*Robert L. Kennedy, Jr.,* assistant district attorney, argued the cause, and

*Curt T. Schneider*, attorney general, *Keith Sanborn*, district attorney, and *Stephen M. Joseph*, assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Thomas Leo McCorgary appeals from two convictions, second degree murder (K. S. A. 21-3402) and aggravated robbery (K. S. A. 21-3427).

Appellant's first point of error concerns the admission in evidence of the testimony of David Elliott, a police informer, with whom appellant was incarcerated while awaiting trial on the criminal charges. Elliott by prior arrangement with the police agreed to obtain information from McCorgary concerning the whereabouts of the murder victim's body and any other information that might be helpful to the prosecution. This prior secret arrangement was made after a complaint had been filed and warrant had been issued. When McCorgary was arrested he was taken before a magistrate and an attorney was appointed for him. He was then placed in an eight man cell. Elliott was one of his cellmates. During the next few days Elliott made friendly overtures to McCorgary. Elliott was a person who might be referred to as a "jailhouse lawyer". He gave free advice to other cellmates on their legal problems. During this time another cellmate asked Elliott about his legal problems. Thereafter McCorgary sought his advice and asked Elliott if the police could convict a person of murder if they couldn't find the body of the victim. Later McCorgary heard a radio report that the body of Karl Williams had been found. He became agitated, sought out Elliott and asked what the police would need to identify a body. Elliott then obtained a number of incriminating statements from McGorgary including a verbal confession in which McCorgary disclosed he had killed Williams by striking him on the head with a steel rod and had buried the body in a grove of trees near the steel plant where he and Williams had been employed. He admitted taking the victim's car.

Prior to trial appellant McCorgary filed a motion to suppress Elliott's testimony. The motion was denied. At the trial appellant renewed his objection to Elliott's testimony. A hearing, as required by K. S. A. 22-3215, was held to determine the admissibility of the testimony. The trial court determined that these oral statements made to Elliott were voluntary and not a product of interrogation

on Elliott's part. They were admitted in evidence through the testimony of Elliott.

On appeal appellant contends that Elliott's statement should have been suppressed under the rule announced by the Supreme Court of the United States in *Massiah v. United States*, 377 U. S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199. Appellant's argument is persuasive.

In *Massiah* the defendant had been arrested and indicted on a federal narcotics charge. While free on bail Massiah engaged in conversation with a co-defendant who had previously agreed to cooperate with the narcotic agents. This conversation was surreptitiously monitored by a federal agent. The agent testified at trial and recounted Massiah's incriminatory admissions made during the conversation between Massiah and the co-defendant. On appeal the testimony of the agent who monitored the conversation was ordered suppressed by the Supreme Court for the reason that Massiah was denied his Sixth Amendment right to assistance of counsel. In *Massiah* the Supreme Court, speaking of the Sixth Amendment right to assistance of counsel, stated:

". . . We hold that the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. . . ." (377 U. S. at p. 206.)

In ordering the testimony of the government agent suppressed, the Supreme Court relied on *Spano v. New York*, 360 U. S. 315, 3 L. Ed. 2d 1265, 79 S. Ct. 1202. The *Massiah* court stated that, although the Spano confession was suppressed on the totality of the circumstances, four concurring Justices had pointed out in a concurring opinion that the constitution required reversal of the Spano conviction upon the sole and specific ground that the confession had been deliberately elicited by the police after the defendant had been indicted, and therefore at a time when Spano was clearly entitled to a lawyer's help. It was stated that under our system of justice the most elemental concepts of due process of law contemplate that, after an indictment is found, a defendant is entitled to the protection of all procedural safeguards, including the aid of counsel. Any secret interrogation of the defendant from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and violates the fundamental rights of a person charged with crime.

In Kansas a criminal prosecution may be deemed commenced upon filing complaint and issuance of warrant. (*State v. Cashman,* 174 Kan. 272, Syl. ¶ 3, 255 P. 2d 660; *State v. Hemminger,* 210 Kan. 587, Syl. ¶ 2, 502 P. 2d 791.) After a criminal prosecution has been commenced a defendant is as much entitled to aid of counsel as at the trial itself, absent a voluntary and knowing waiver. K. S. A. 22-4503 provides:

"A defendant charged by the state of Kansas in a complaint, information or indictment with any felony is entitled to have the assistance of counsel at every stage of the proceedings against him. . . ."

In *State v. Melton,* 207 Kan. 700, 486 P. 2d 1361, and *State v. Armstrong,* 207 Kan. 681, 486 P. 2d 1322, it is pointed out that a defendant may effectively waive the right to counsel but to be an effective waiver the record must plainly show the accused intelligently and understandingly rejected the assistance of counsel. It can hardly be said that a voluntary and knowing waiver of the assistance of counsel occurred under the circumstances of this case where by secret prearrangement the accused is placed in a cell with a police informer.

The state in the present case contends that the "Massiah exclusionary rule" applies only to post-indictment statements which are deliberately elicited by police officers or their agents. The state further argues that there was no interrogation of McCorgary by Elliott, and that the trial court's findings that Elliott neither interrogated nor elicited information from appellant are binding on this court. We will assume the court's findings on this subject are supported by substantial evidence and accept the latter premise.

Before examining the question it should be noted the exclusionary rule declared in *Massiah* does not apply to voluntary statements of a defendant which are made to private citizens. (*People v. Smith,* 5 Ill. App. 3d 642, 283 N. E. 2d 736.) It has been held that if a defendant is injudicious in his conversations with fellow prisoners and the latter without prior arrangements with the police take it upon themselves to tell police officials of these conversations such conversations are admissible in evidence. (*United States v. Aloisio,* 440 F. 2d 705 [7th Cir. 1971], cert. den. 404 U. S. 824, 30 L. Ed. 2d 51, 92 S. Ct. 49; *United States v. Casteel,* 476 F. 2d 152 [10th Cir. 1973]; *Milani v. Pate,* 425 F. 2d 6 [7th Cir. 1970], cert. den. 400 U. S. 867, 27 L. Ed. 2d 107, 91 S. Ct. 109.)

In support of its position, that the "Massiah exclusionary rule" does not apply to voluntary post-indictment statements made to a

police informer, the state cites *People v. Lopez*, 60 Cal. 2d 223, 32 Cal. Rptr. 424, 384 P. 2d 16 (1963), cert. den. 375 U. S. 994, 11 L. Ed. 2d 480, 84 S. Ct. 634, rehr. den. 376 U. S. 939, 11 L. Ed. 2d 660, 84 S. Ct. 794. Certiorari was denied in that case on January 1, 1964. A rehearing was denied on March 2, 1964. *Massiah* was decided May 18, 1964. The denial of certiorari and rehearing in *Lopez* is not persuasive since *Massiah* was subsequent thereto and the new rule would not apply to that decision.

The cases of *State v. McLeod*, 1 Ohio St. 2nd 60, 203 N. E. 2d 349, and *Beatty v. United States*, 377 F. 2d 181 (5th Cir. 1967) are of interest. *McLeod* was reversed in a memorandum decision by the Supreme Court in *McLeod v. Ohio*, 381 U. S. 356, 14 L. Ed. 2d 682, 85 S. Ct. 1556, and *Beatty* was reversed in a similar decision in *Beatty v. United States*, 389 U. S. 45, 19 L. Ed. 2d 48, 88 S. Ct. 234.

In *State v. McLeod*, supra, the Ohio court attempted to limit the scope of *Massiah* to statements deliberately elicited by interrogation of an accused by an informer. This is the same limitation the state would have us adopt in the present case. The high court's reversal of the narrow interpretation by the Ohio court cites *Massiah* as sole authority for the exclusion of a spontaneous, voluntary post-indictment confession made to the informer.

In *Beatty v. United States*, supra, the 5th Circuit Court of Appeals had held that statements made by an accused to an informer were voluntary and admissible since they had not been induced by the informer. The United States Supreme Court reversed in a memorandum opinion citing *Massiah* in support thereof.

After reviewing both federal and state cases on the question it is clear that interrogation or the lack of it does not determine the admissibility question. When the police or other state officers surreptitiously place a defendant in a cell with an informer for the purpose of obtaining information concerning pending charges in the absence of counsel, such action by the police contravenes the basic dictates of fairness in the conduct of criminal causes and violates the fundamental rights afforded by the presence of counsel.

The testimony of a police informer concerning incriminating statements made by the defendant while in jail pending charges is not admissible at defendant's trial if the information has been surreptitiously obtained by prior arrangements between the police and the informer.

It should be understood in this case we do not question that it is entirely proper to continue an investigation of the suspected crim-

inal activities of the defendant after a criminal prosecution has been commenced. Law enforcement officials have the right and the duty to use all information that comes into their hands pointing to the guilt of an accused. This is true even though the informer may harbor expressed or unexpressed motives such as an expectation of lenient treatment. It is only when the state actively engages in prior arrangements with an informer to obtain desired information in contravention of constitutionally protected rights that the sanction of suppression of the evidence is applied. The surreptitious arrangement which undercuts the right to counsel by the use of a secret informer is the evil sought to be removed. A police officer seeking information under similar circumstances would be required to inform the accused of his right to counsel and not proceed further until the accused knowingly and voluntarily waived such right. The whole purpose of the state in using a secret informer is to avoid that which is required of a police officer. What the state may not do directly to secure evidence, it cannot do indirectly. Such unfair tactics, if permitted, would override the individual's constitutionally based rights. (*Evalt v. United States*, 359 F. 2d 534 [9th Cir. 1966]; *State v. Smith*, 107 Ariz. 100, 482 P. 2d 863; *Commonwealth, Appellant v. Bordner*, 432 Pa. 405, 247 A. 2d 612; *State v. Atkins*, 251 Or. 485, 446 P. 2d 660.)

In the present case David Elliott was selected in advance by the police to obtain information about the Williams' murder. McCorgary was placed in a cell with Elliott pursuant to prior arrangement. This occurred after his arrest on complaint and warrant. The criminal prosecution had been commenced and an attorney had been appointed for him. Under these circumstances, the testimony of the police informer as to incriminating statements made by the defendant while in jail pending charges is not admissible at the defendant's trial. The admission of Elliott's testimony in this case constitutes reversible error.

Several additional points are raised which merit attention since the case must be remanded for a new trial.

Appellant contends that he was denied a fair trial by the decision of the trial court which permitted the jury to view the scene of the crime. He asserts that the view was calculated to play upon the emotions of the jury. The state argues that the view was necessary so that the jury might better understand the testimony of certain witnesses.

K. S. A. 22-3418 provides:

"Whenever in the opinion of the court it is proper for the jurors to have a view of the place in which any material fact occurred, it may order them to be conducted in a body under the charge of an officer to the place, which shall be shown to them by some person appointed by the court for that purpose. They may be accompanied by the defendant, his counsel and the prosecuting attorney. While the jurors are thus absent, no person other than the officer and the person appointed to show them the place shall speak to them on any subject connected with the trial. The officer or person appointed to show them the place shall speak to the jurors only to the extent necessary to conduct them to and identify the place or thing in question."

The trial court fully complied with the guidelines established in K. S. A. 22-3418 and instructed the jury regarding the limited purpose of its visit to the scene of the crime. It is discretionary as to whether a trial court shall permit a jury in a criminal case to view the scene of a crime. This court will not reverse such a decision of the trial judge except for an abuse of discretion which affirmatively appears to have affected the substantial rights of the party complaining. (*State v. Winston*, 214 Kan. 525, 530, 520 P. 2d 1204.)

The appellant has made no affirmative showing that the jury was prejudiced by its view of the scene. Even though photographs of the scene were admitted into evidence and were available for the jury's inspection, it can be said that a view of the physical surroundings of the steel plant would further enlighten the jury concerning the testimony of witnesses at the trial. It does not appear that the trial judge abused his discretion by granting the view.

Appellant next argues that the court erred in instructing the jury that "flight" might be taken into account upon the question of the consciousness of guilt of the defendant. The full text of the instruction challenged by appellant reads as follows:

"You are instructed that flight, concealment, fabrication of evidence or the attempt to fabricate evidence or the giving of false information may be taken into account upon the question of the consciousness of guilt of the defendant. Therefore, if you find from the evidence that a defendant soon after the commission of an offense alleged in the Information fled to avoid arrest and trial, fabricated evidence in his behalf, sought to create a false alibi, or gave false information in his behalf, you may take such facts and circumstances into consideration in determining his guilt or innocence. Flight, concealment, fabrication, use of a false name and fabrication of evidence are admissable as circumstances which you may consider in determining the probabilities of the guilt or innocence of the defendant. The weight of such circumstances is a matter for the jury to determine in connection with the other facts and circumstances in the case."

Appellant relies on *State v. Floyd*, 210 Kan. 383, 502 P. 2d 744,

which holds that it is improper to instruct a jury on flight to escape arrest and trial without evidence of such flight. In the present case, as in *Floyd*, there was no evidence which indicated that appellant attempted to flee following Williams' murder. The evidence clearly shows the contrary. McCorgary remained in Wichita and continued his employment at Pinsker Steel until the time of his arrest.

The instruction quoted above is overly broad. Flight was not in issue at appellant's trial. Among the several types of conduct enumerated by the trial court in its instruction, the evidence showed that appellant may have given false information concerning Williams' whereabouts, that he may have concealed evidence by washing out Williams' auto following the crime and that the body was buried. It has been held improper to instruct the jury upon matters which are not in evidence, even though the instruction correctly states the law. (*State v. Floyd*, supra, at p. 388, and *State v. Bly*, 215 Kan. 168, 176, 523 P. 2d 397.)

Evidence to establish the defendant's consciousness of guilt such as flight, concealment, fabrication of evidence or the giving of false information is admissible in a criminal case. (*State v. Norwood*, 217 Kan. 150, 535 P. 2d 996; *State v. Donahue*, 218 Kan. 351, 543 P. 2d 962.) However, we disapprove of giving an instruction which emphasizes and singles out certain evidence admitted at a criminal trial. The weight of all evidence should be left to the jury and special emphasis should not be given in the instructions. The instruction as to flight in this case was improper since no evidence of flight was introduced. In any subsequent trial of this defendant we direct that the entire instruction on consciousness of guilt be omitted from the instructions to the jury.

Appellant further contends the trial court should have instructed the jury on the lesser included crimes of theft and manslaughter. The rule requiring an instruction on lesser included offenses as codified in K. S. A. 21-3107 (3) becomes applicable only when such an instruction is called for by the evidence and when the jury might well convict the accused of the lesser crime. (*State v. Harris*, 215 Kan. 961, 962, 529 P. 2d 101, and *State v. Schoenberger*, 216 Kan. 464, 468, 532 P. 2d 1085.) Here no evidence was presented which indicated that appellant killed Williams in the heat of passion or that Williams' property was taken other than forcibly.

Appellant suggests that the verdicts returned against him by the jury were inconsistent. He notes that the trial court instructed the

jury on the crimes of premeditated murder in the first degree, felony murder in the first degree and second degree murder. The jury was also instructed on the crime of aggravated robbery. Appellant reasons that the verdicts which convicted him of aggravated robbery and second degree murder are inconsistent because under the instructions a conviction for aggravated robbery would logically carry with it a conviction for felony murder, not second degree murder.

A simple answer to appellant's argument is that the jury may have found that the robbery occurred before the murder as a separate incident. Under those circumstances no inconsistency in the verdicts appears. However, in response to challenges by other defendants asserting that verdicts were inconsistent, this court has observed that where a jury relieves a defendant of punishment for a greater offense (felony murder) and convicts him of a lesser included offense (second degree murder) the jury may have adopted its conclusion as an act of clemency. In such a case the defendant cannot complain because the error does him no harm. (*State v. Brundige*, 114 Kan. 849, 852, 220 Pac. 1039.)

Even so it has been noted by this court that the conduct of a jury is sometimes devoid of logic, and inconsistent verdicts may result. Even in cases where the two verdicts are irreconcilable the convictions will not be reversed on grounds of inconsistency. (*State v. Murphy*, 145 Kan. 242, 65 P. 2d 342, and *State v. Ogden*, 210 Kan. 510, 502 P. 2d 654.)

Appellant next argues that the jury should have been instructed on the defense of intoxication. In *State v. Seely*, 212 Kan. 195, 510 P. 2d 115, it is said:

"A criminal defendant is, of course, entitled to an instruction on his theory of defense if it is supported by any evidence whatever. *State v. Severns*, 158 Kan. 453, 148 P. 2d 488, Syl. ¶ 4; *State v. Osburn*, 211 Kan. 248, 505 P. 2d 742; *State v. Fitzgibbon*, 211 Kan. 553, 507 P. 2d 313. On the other hand, there must be evidence which, viewed in the light most favorable to the defendant, would justify a jury finding in accordance with the defendant's theory. *State v. Hamrick*, 206 Kan. 543, 479 P. 2d 854; *State v. Harden*, 206 Kan. 365, 480 P. 2d 53, Syl. ¶ 5." (p. 197.)

In this case there was no evidence that appellant was intoxicated at the time the crime occurred. Therefore he was not entitled to an instruction on intoxication.

Appellant contends the trial court erred by overruling his motion for a change of venue. He claims that publicity in the Wichita newspapers prevented a fair trial. Appellant has included several

news articles in the record as evidence of the prejudice generated against him prior to trial.

K. S. A. 22-2616 (1) governs motions for change of venue:

"In any prosecution, the court upon motion of the defendant shall order that the case be transferred as to him to another county or district if the court is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county."

A change of venue in a criminal case lies within the sound discretion of the trial court whose ruling will not be disturbed when there is no showing of prejudice to the substantial rights of the defendant. (*State v. Colin,* 214 Kan. 193, 198, 519 P. 2d 629.) The publication of newspaper articles in the local papers does not establish prejudice *per se.* (*State v. Randol,* 212 Kan. 461, Syl. ¶ 1, 513 P. 2d 248.) The burden of proof is cast upon the defendant to show prejudice in the community, not as a matter of speculation but as a demonstrable reality. (*State v. Cameron & Bentley,* 216 Kan. 644, 646, 533 P. 2d 1255.)

In this case McCorgary presented only newspaper articles in support of his motion for change of venue. No evidence or affidavits were introduced to establish what effect this publicity might have had on prospective jurors. No affirmative evidence that prejudice existed in the community was introduced. The trial court properly denied the motion for change of venue under those circumstances. (*State v. Eldridge,* 197 Kan. 694, Syl. ¶ 2, 421 P. 2d 170, cert. den. 389 U. S. 991, 19 L. Ed. 2d 483, 88 S. Ct. 486.)

Appellant argues that the trial court erred by overruling his motion for acquittal. Judgment of acquittal on the court's own motion or on the motion of the defendant is provided for in K. S. A. 22-3419. This statute was construed and the tests to be applied by the trial court in passing upon a motion for judgment of acquittal are set out in *State v. Gustin,* 212 Kan. 475, 510 P. 2d 1290. In *Gustin* it was held:

"A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion." ( Syl. ¶ 3.)

We have carefully examined the evidence appearing in the record

and after excluding the testimony of David Elliott, the police informer, we find substantial evidence to support the charges. Guilt beyond a reasonable doubt was a fairly possible result. The trial court did not err by overruling defendant's motion for acquittal.

In his final point appellant argues the trial court improperly limited cross-examination of David Elliott, the police informer. Since we hold the entire testimony of David Elliott should be suppressed this point need not be discussed.

In conclusion we note that the body of Karl Williams was discovered by the police independently of the statements made by the appellant to David Elliott. A fellow worker advised the police of appellant's nervous reactions on several occasions when there was activity in the area of the grave site. This led the police to the location of the body. It was thereafter appellant broke down and admitted his guilt and advised Elliott of the location. On a subsequent trial the suppression of evidence here ordered extends only to the testimony of David Elliott. The location of the body and the evidence afforded thereby is not the "fruit of a poisoned tree".

We further note that appellant was charged with first degree murder and convicted of the lesser offense of second degree murder. As to these two offenses a conviction of the lesser offense is an acquittal of the greater degrees of the offense. See *State v. Gunzelman,* 210 Kan. 481, 502 P. 2d 705, 58 A. L. R. 3d 522, and cases cited at p. 490 of the opinion.

The judgment and sentences are reversed and the case is remanded with directions to grant the appellant a new trial on the lesser included offense of second degree murder and on the offense of aggravated robbery in accordance with the foregoing opinion.

Fatzer, C. J., dissenting.