57,360

State of Kansas, *Appellee*, v. Charles R. Peck, *Appellant*.

(703 P.2d 781)

Opinion filed July 26, 1985.

*David R. Gilman*, of Overland Park, argued the cause and was on the brief for appellant.

*Richard G. Guinn*, assistant district attorney, argued the cause, and *Michael B. Buser*, assistant district attorney, *Dennis W. Moore*, district attorney, and *Robert T. Stephan*, attorney general, were on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from a jury conviction for aggravated kidnapping, K.S.A. 21-3421; robbery, K.S.A. 21-3426; aggravated battery, K.S.A. 21-3414; burglary, K.S.A. 21-3715; and felony theft, K.S.A. 21-3701.

The facts are bizarre. On Saturday, July 2, 1983, James W. Norwine, a car salesman and divorced father of one, left his home in Lenexa at about 10:00 p.m. Norwine had a sexual preference

for men. This caused him to travel on this night to the area of 10th and McGee in Kansas City, Missouri, with the hope and expectation of meeting another man with a similar sexual preference.

At about 10:30 p.m. Norwine met appellant Charles Peck. Norwine had met Peck the prior Wednesday when Peck rode with Norwine in his car. After that car ride, Peck introduced Norwine to Robert Epple. Norwine and Peck then parted amicably.

On July 2 when Norwine returned to the 10th and McGee area he again met Charles Peck, who agreed to go with Norwine to Norwine's home to spend the night.

When they arrived at Norwine's home, Peck and Norwine watched television and drank alcoholic beverages for about an hour. Norwine then suggested, "It's getting late; let's go to bed." They walked up the stairs to Norwine's bedroom. Once in the bedroom, Norwine took off his watch and removed $40 and a credit card wallet containing credit cards from his pockets. He laid them on his bedroom dresser. Norwine was also wearing a diamond ring on his hand which he did not remove.

Suddenly and without warning, Peck shoved Norwine to the bed, produced a pair of handcuffs and handcuffed Norwine's hands behind his back. Norwine asked, "What's going on? What are we doing, playing games? What are we doing?" Peck replied he was going to rob Norwine. Norwine pleaded with Peck to release the handcuffs because they were painfully tight. Norwine then told Peck he could have anything he wanted. Shortly thereafter Peck yelled at Norwine, "You lousy faggot . . . you thought you could get it all or get me for $40?"

Peck struck Norwine's face with his fist two or three times. Although he had difficulty recalling what occurred after being struck, Norwine testified that while handcuffed, he was pushed down the stairs, out of his house and forced into the trunk of his car. Norwine's facial injuries were so serious he was physically unable to scream or yell for help.

The car began to move with Norwine still confined inside the trunk. After a while, the car stopped and Norwine overheard a voice talking about Robert. The car moved again, and some time later it stopped. Norwine then heard things being loaded into the

car. At about this time Norwine heard a voice say, "Keep quiet or I'm going to kill ya."

After the car had traveled some distance, Norwine was able to hear the sound of things being taken out of the car. The car moved again, and Peck took Norwine from the trunk of the car. At this time Norwine observed Robert Epple standing nearby. Epple told Norwine: "[W]e've ripped off some stuff . . . from your house, but your bird is okay. You are going to be all right. You're going to get through this."

Peck then proceeded to knock Norwine down and to kick him in the lower back. Norwine was then put back into the trunk of his car. After traveling a distance, the car stopped and Peck and Epple left.

Shortly before 6:00 a.m. on July 3, 1983, Kansas City, Kansas, police officer Greg Burris was dispatched to the Holiday Inn at 424 Minnesota, Kansas City, Kansas, to assist another officer who had found Norwine locked in the car trunk.

Upon his arrival, Burris assisted in opening the trunk, whereupon he found Norwine clad in a pair of boxer shorts and very bloody, bruised and swollen. Officer Burris specifically testified:

"His face was swelled to a great extent. His mouth was swelled, his jaws, his eyes were swollen, mostly shut. There was a large amount of dried blood on his face and mouth and nose. He had an extremely hard time talking to us due to all the broken teeth and his tongue was swelled and his jaw was swelled up. He had a real hard time even talking to us."

In addition to Norwine's face and head injuries, Burris noted Norwine's handcuffed wrists were so tightly clasped that the swollen wrists almost covered the handcuffs. An ambulance was dispatched and Norwine was rushed to the hospital.

At the hospital it was determined Norwine's jaw was broken in two places. A temporary splint was utilized to stop the bleeding in Norwine's airway. Two days later Norwine underwent surgery on his jaw. His jaw was wired shut for two months in order to permit the bone fractures to knit properly.

At trial, Peck's friend and accomplice, Robert Epple, testified regarding his recollection of the incident involving Norwine.

Epple testified he knew Peck was a male prostitute. On Saturday evening, July 2, 1983, Peck picked up Epple and drove him to the downtown area of Kansas City. At about 9:00 p.m. Epple recalled seeing appellant get in the passenger side of a burgundy automobile and drive promptly away. At about mid-

night Epple saw Peck again. This time he was driving the burgundy automobile. Peck was intoxicated and wearing a diamond ring.

Peck picked up Epple and drove to the Norwine residence in Lenexa. They proceeded to take several items of value from the home and load them into Norwine's burgundy Oldsmobile.

Epple testified he became concerned when he observed blood on the sheets and walls in Norwine's bedroom. After returning to Norwine's car and riding back to Kansas City, Epple asked Peck about the blood. Appellant then stopped the car and told Epple he had something to show him.

He opened the trunk of the car and showed Epple its contents, which was the wounded Norwine. Norwine looked in bad shape to Epple. Nevertheless, Peck again roughed up Norwine by throwing him on the ground, still handcuffed. He then proceeded to kick Norwine in his ribs and chest.

Epple claims he tried to stop Peck's attack on Norwine, but to no avail. After Norwine was returned to the trunk of the car, Peck drove Epple to his residence and dropped him off. Shortly thereafter at about 3:00 a.m. on Sunday, July 3, 1983, Peck returned to Epple's home driving his own Nova. The two of them decided to leave immediately for St. Louis.

Peck told Epple that Norwine had been left in the trunk of his car in a motel parking lot.

The men traveled on eastbound Interstate 70 towards St. Louis, Missouri. At one point they stopped the car in a motel parking lot. Peck got out of the car and later returned with a purse containing some money. They next stopped for gasoline. A short time later Peck and Epple became aware a Missouri highway patrol officer was following them. Appellant began swearing, took off the diamond ring which he was wearing and hid it inside the steering wheel cap of the car.

Sergeant Les Bruning of the Missouri highway patrol was traveling on Interstate 70 near Columbia, Missouri, at approximately 7:35 a.m. on July 3, 1983, when he heard a police dispatch reporting a vehicle had left a filling station in Columbia, Missouri, without paying for gasoline. Included in the dispatch was the vehicle description and license plate number.

Simultaneously Sergeant Bruning observed a car matching the vehicle description in the dispatch. He clocked the car at a speed

of 77 miles per hour. Sergeant Bruning stopped the car. Peck was the driver and Epple was the passenger. Appellant was arrested for speeding, then escorted to Columbia for posting of an appearance bond.

During the drive back to Columbia, Sergeant Bruning observed Peck making gestures as if to hide something under the front seat of his car. Upon arrival at the county jail Sergeant Bruning searched Peck's car and found a brown ladies' purse between the front seats. Epple indicated to Sergeant Bruning the purse belonged to his girlfriend in Kansas City. Sergeant Bruning's search also revealed several credit cards with the name James Norwine on them and a handcuff key on Peck's key ring.

An inventory of Peck's car resulted in the discovery of numerous items from the Norwine residence. These included an alarm clock, clothing, radio, cassette player, color television and remote control unit, electric knife, water pik, cassette recorder, typewriter, slide projector, liquor and wine bottles and an automatic coffee maker.

At trial, Peck testified in his own behalf. He stated when he was a juvenile he spent over four years in juvenile institutions. He and his wife had both been previously convicted of grand larceny in Oklahoma. After his divorce from his wife in November, 1978, he became a male prostitute. Appellant stated he traveled throughout the southern United States, sometimes with his friend Robert Epple. Peck and Epple had arrived in Kansas City about two weeks prior to the Norwine encounter.

Peck also testified that on Saturday, July 2, 1983, he observed Norwine driving his car and agreed to go with him to his home. Once at the Norwine home, he recalled drinking alcohol and watching television.

Peck testified he and Norwine then went upstairs and began to have oral sex in the bedroom. Appellant claimed Norwine asked him to wear handcuffs during oral sex. Later, according to appellant's account, Norwine attempted to touch appellant's anal area, at which point the appellant hit Norwine. Appellant admitted striking Norwine three times, knocking him off the bed and onto the floor. Appellant testified he then heard Norwine whimpering, which angered him, so he proceeded to kick Norwine.

According to appellant he then handcuffed Norwine, led him downstairs and placed him in the back seat of Norwine's car.

Appellant testified he later placed Norwine in the car's trunk, picked up Robert Epple, stopped the car in Lenexa and removed Norwine from the trunk of the car. Appellant claimed he accidentally fell on top of Norwine. After placing Norwine back in the car's trunk, appellant drove to Norwine's home. Appellant admitted to stealing a large number of items from Norwine.

Appellant testified that ultimately both he and Epple left Norwine in the trunk of Norwine's vehicle and then left the Kansas City area in appellant's car on Interstate 70.

At the conclusion of all the evidence the jury found appellant guilty of aggravated kidnapping, aggravated battery, robbery, burglary, and theft of property of $100 or more. Peck appeals.

Appellant initially argues the trial court improperly allowed into evidence testimony regarding appellant's returning to his car with a woman's purse on July 3.

Sergeant Bruning testified as follows about the purse:

"Q: What did you observe at that time?
A: The ladies' purse picked up by me. Mr. Peck and Mr. Epple were alongside the car and I showed the purse to them and asked them who the purse belonged to.
Q: Did you get any response?
A: Yes, sir. I did. I believe Mr. Epple stated it belonged to a girlfriend of his in Kansas City."

Later the following inquiry was made to Robert Epple concerning Peck's flight from Kansas City.

"Q: Okay. Did you have occasion in and around Columbia, Missouri, to make any stops?
A: We did.
Q: Where did you stop?
A: I don't know the exact location. It was another motel service.
Q: And what happened there?
A: I had passed out and I had awoke in an empty car, I believe, inside this parking lot of a motel service and periodically, Mr. Peck showed up with a purse, got in the car.
Q: What happened when Mr. Peck came back with that purse?
A: He opened it.
Q: And what did he do?
A: Rummaged through it, found a couple dollars, I think.
Q: What happened after that?"

Appellant then objected to the inquiry into the purse, claiming it was impermissible evidence of a subsequent crime. The State

argued there was no evidence the purse was stolen and the events concerning the purse were merely part of the res gestae of the Missouri arrest and the search in connection with that arrest. The State argues the testimony was not an attempt to prove the commission of a separate crime.

The trial court held:

"[T]here was reference to a purse in earlier testimony to which there was no objection. I concur that there is a certain implication in the fact of showing up with a woman's purse, but as long as there is no testimony that that purse was, in fact, stolen, I see no harm to result from that testimony."

Appellant argues the court erred in allowing the jury to hear the evidence of the purse and in disallowing a limiting instruction pursuant to K.S.A. 60-455. In *State v. Gray*, 235 Kan. 632, 681 P.2d 669 (1984), we held:

"It has long been the rule in this state that, while evidence of an independent offense may be admissible in a criminal case under the provisions of K.S.A. 60-455 for the limited purpose of showing motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, it may also possess evidential value to show the commission of the offense itself, in which case the evidence is admissible independently of the foregoing statute. Evidence which is otherwise relevant in a criminal action is not rendered inadmissible because it may disclose another or independent offense." pp. 634-35

The State argues the evidence which was admitted did not reveal an independent offense of purse snatching, but rather only established that appellant appeared in the car with a woman's purse. The purse could have been given to him, he could have found it, or he could have previously had rightful possession of it and had taken it out of the trunk at that point in time.

Further, the State argues, pursuant to *Gray*, this is evidence which is "otherwise relevant" since it goes to the res gestae of the crime. In *State v. Ferris*, 222 Kan. 515, 565 P.2d 275 (1977), we discussed the law regarding res gestae evidence:

"Acts done or declarations made before, during or after the happening of the principal fact may be admissible as part of the *res gestae* where they are so closely connected with it as to form in reality a part of the occurrence. (*State v. Platz*, 214 Kan. 74, 76, 519 P.2d 1097, and authorities cited therein.) Evidence that does not constitute a portion of the crimes charged is admissible if there is some natural, necessary or logical connection between them and the inference or result which they are designed to establish. (*In re Estate of Isom*, 193 Kan. 357, 394 P.2d 21; *State v. Fagan*, 213 Kan. 587, 518 P.2d 552; and *State v. Brown*, 217 Kan. 595, 538 P.2d 631.)" p. 517.

We agree with the trial court and hold the testimony admissible as res gestae evidence.

Appellant next argues the trial court's instruction and the jury's verdict on aggravated kidnapping were improper. He cites four errors. They are: (1) conviction of aggravated kidnapping is inconsistent with the finding of guilty of simple robbery; (2) the conviction is based on an erroneous instruction; (3) the verdict is not supported by the evidence; and (4) the appellant was also convicted of aggravated battery.

Appellant initially argues the conviction for simple robbery, after being acquitted by the jury of aggravated robbery, and the conviction for aggravated kidnapping are inconsistent.

Appellant recognizes the rule in Kansas is that a verdict will not be reversed on grounds of inconsistency, pursuant to our holding in *State v. McCorgary*, 218 Kan. 358, 543 P.2d 952 (1975), *cert. denied* 429 U.S. 867 (1976), but argues this rule should be reversed. The *McCorgary* court stated: "[I]t has been noted by this court that the conduct of a jury is sometimes devoid of logic, and inconsistent verdicts may result. Even in cases where the two verdicts are irreconcilable the convictions will not be reversed on grounds of inconsistency." 218 Kan. at 366.

This rule, however, is irrelevant to the disposition of the issue at bar because the facts here reveal the two convictions are not inconsistent. The jury's verdict indicates it believed appellant inflicted injury on Norwine in the commission of the kidnapping. But the jury found there was no violence used in the commission of the robbery. This is consistent with the evidence. Norwine testified that in getting him to leave the house, appellant beat him. It was unknown, however, when appellant obtained the items from Norwine which constituted the robbery. This includes the taking of the diamond ring from Norwine's person. Since there was no direct evidence as to violence occurring with that taking, the jury acquitted Peck on the charge of aggravated robbery, and instead found him guilty of simple robbery.

Appellant next argues the aggravated battery conviction was duplicitous with the aggravated kidnapping charge. There is no merit to this argument. There is substantial competent evidence to support the verdict of both aggravated battery and aggravated kidnapping. While appellant and Norwine were in the bedroom, appellant committed aggravated battery on the victim. This vio-

lence was separate and distinct from the violence used to kidnap Norwine.

Appellant next argues the aggravated kidnapping instruction is clearly erroneous. This "clearly erroneous" standard is the correct standard of appellate review since appellant gave no basis for his objection to the instruction at trial. We have held a party may not assign as error the giving or failure to give an instruction unless he objects to the instruction stating the specific grounds for the objection. Absent such specificity an appellate court may reverse only if the instruction is clearly erroneous. *State v. Korbel*, 231 Kan. 657, Syl. ¶ 4, 647 P.2d 1301 (1982).

Appellant claims the instruction is clearly erroneous because it does not state all the elements of the crime of aggravated kidnapping. The challenged instruction is identical to PIK Crim. 2d 56.25, and delineates each element of the crime. We approve the instruction given and thus find this issue without merit.

Appellant also argues the verdict was not supported by the evidence. We have held in a criminal action when the defendant challenges the sufficiency of the evidence to support a conviction, the standard of appellate review is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained. *State v. Douglas*, 230 Kan. 744, Syl. ¶¶ 2 and 3, 640 P.2d 1259 (1982).

Appellant admits, and the victim confirmed, that he beat the victim to the point of breaking the victim's jaw; that he placed the victim in extremely tight handcuffs; that he took the victim from the victim's home against his will and placed him in the trunk of a hot car overnight, in just his underwear, handcuffed and bleeding; that he took him out of the trunk once, pushed him on the ground and kicked him; and that many items of value were taken by appellant from the victim's home and from his body.

We find the evidence sufficient to support the verdict.

Peck next contends the trial court did not properly respond to the jury's question to the court after deliberations had begun.

During the course of deliberations the jury sent the following question to the trial judge concerning subparagraphs 2 and 3 of Instruction 15:

"In relation to Claims No. 2 and No. 3, is it to be our consideration that to prove this charge, we have to assume that Mr. Norwine was injured during the actual course of the robbery or that the prior bodily harm that he suffered during the initial battery is enough to constitute and satisfy the condition of bodily harm during the robbery or must he be injured once again to satisfy the conditions of claims No. 1 and No. 3? In other words, does he have to be injured a second time?"

## Instruction 15 reads as follows:

"The defendant is charged in Count II of Case No. K-44784 with the crime of aggravated robbery. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant intentionally took property from the person or presence of James W. Norwine;

"2. That the taking was by force;

"3. That the defendant inflicted bodily harm on the person of James W. Norwine in the course of such conduct; and

"4. That this act occurred on or about the 2nd or 3rd day of July, 1983, in Johnson County, Kansas."

Appellant relates this jury question to the question asked by the jury in *State v. Bandt,* 219 Kan. 816, 549 P.2d 936 (1976). In *Bandt* it was held the judge's failure to clarify his former instruction when the jury was confused as to a clear-cut question of law regarding the essential elements of the crime was reversible error.

In this case, the court responded to the jury's question:

"The Court declines to elaborate upon the written instructions already provided. Please re-read the instructions and apply those instructions collectively to the facts as proved to your satisfaction beyond a reasonable doubt."

Pursuant to *Bandt,* the judge had broad discretion in deciding to merely instruct the jurors to re-read their previous instructions. The *Bandt* court stated:

"We wish to make it clear that instances may sometimes occur in the course of a trial where the jury raises questions which are irrelevant or which are already adequately covered by the original instructions. Under those circumstances the trial court may decline to answer such questions and direct the jury to re-read the instructions already given. A trial court is vested with a great amount of discretion in answering questions directed to him by a jury after the jury has begun its deliberations." 219 Kan. at 823-24.

Appellant argues the court's response was in error and the judge should have instructed the jury "that in order to find guilt

on any offense charged or included, it must find that all of the elements 'co-exist simultaneously.' "

Appellee notes the instruction which was previously given on this charge required the jury to find that bodily harm was inflicted by the defendant "during the course of" the taking of the property.

We find no real difference between the statement that all of the elements must "co-exist simultaneously" and that the elements occurred "during the course of" the other elements. The lack of distinction between the two instructions fails to show any abuse of discretion by the trial court in refusing to give appellant's proposed explanation. We, therefore, hold the district court did not abuse its discretion in responding to the jury question. This issue is without merit.

The judgment is affirmed.