No. 89,129

STATE OF KANSAS, *Appellee,* v. TIMOTHY LEE WOLF
PENNINGTON, *Appellant.*
(80 P.3d 44)

Opinion filed December 12, 2003.

*Sarah Ellen Johnson*, assistant appellate defender, argued the cause, and *Peter Maharry*, assistant appellate defender, was on the brief for appellant.

*Robert D. Hecht*, district attorney, argued the cause, and *Deborah L. Hughes*, assistant district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

GERNON, J.: Timothy Lee Wolf Pennington appeals his convictions for one count each of first-degree murder, burglary, attempted theft, and criminal damage to property. We affirm.

## FACTS

A neighbor observed two men enter Gary Whitaker's house at approximately midnight. The neighbor thought she recognized one of the men as someone she had seen at Whitaker's house with a woman named Shannon Hopkins. After observing the house for a few minutes, the neighbor and a friend called the police. When the police arrived and searched the house, two men jumped from a second story window and ran. Police apprehended one of the men, Timothy Pennington, near the house and returned him to the house for identification by Whitaker's neighbors. The neighbor who had seen the men enter the house identified Pennington as the burglar, and the police arrested Pennington for burglary. The State later charged Pennington with burglary, attempted misdemeanor theft, and criminal damage to property.

Before leaving Whitaker's house, the police checked it again to make sure it was clear and found Whitaker's body in the basement. Whitaker had been strangled with an electrical cord, and his throat was cut.

While Pennington was in jail on the burglary charges, he admitted to several other inmates that he had killed Whitaker because he was jealous about Whitaker's suggestion that Pennington's girlfriend, Hopkins, make pornographic videos for the internet. One of Pennington's fellow inmates approached police and offered to provide information about Whitaker's murder. Police asked the inmate to get more information, and he agreed to cooperate with the police. Pennington readily discussed the murder with the inmate, who informed the police of Pennington's confession.

After receiving the information from the jailhouse informant, the State charged Pennington with first-degree murder for Whitaker's death. Ultimately, the State consolidated the murder charge with the burglary, attempted theft, and criminal damage to property charges. A jury found Pennington guilty of all of the charges. Pennington appeals.

## ISSUES ON APPEAL

Pennington raises six issues on appeal: (1) Whether the admission of the testimony of the jailhouse informant violated his Sixth

Amendment right to counsel, (2) whether the trial court erred when it admitted a knife, (3) whether the trial court erred when it admitted photographs Pennington contends were gruesome, (4) whether the use of his criminal history to increase his sentence was proper, (5) whether the use of his juvenile record to increase his sentence was legal, and (6) whether errors in the trial were so numerous and weighty so as to require a new trial due to their cumulative nature.

## INFORMANT TESTIMONY

Pennington argues that the trial court erroneously admitted his confession through the testimony of a jailhouse informant.

The admission of evidence is within the trial court's discretion. Subject to the exclusionary rules, appellate courts review the trial court's decision regarding the admission or exclusion of evidence to determine whether the trial court abused its discretion. The trial court abuses its discretion when its action is arbitrary, fanciful, or unreasonable. The party claiming that the trial court abused its discretion bears the burden of establishing the abuse of discretion. *State v. Jenkins*, 272 Kan. 1366, 1378, 39 P.3d 47 (2002).

Generally, issues that are not presented to the trial court will not be considered on appeal. The same general rule applies to claims of error based on constitutional grounds.

"However, this court has recognized three exceptions to the general rule: (1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason." *State v. Williams*, 275 Kan. 284, 288-89, 64 P.3d 353 (2003).

Pennington agrees that he did not properly preserve the issue for appeal by objecting to the jailhouse informant's testimony but claims that the court should review the issue to serve the ends of justice and prevent the denial of his fundamental rights.

Pennington argues that his Sixth Amendment right to counsel was violated by the jailhouse informant's testimony, citing *Gideon v. Wainwright*, 372 U.S. 335, 344, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963). Pennington asserts that his claim of error must be consid-

ered because the Sixth Amendment right to counsel is a fundamental right. Nevertheless, this court may refuse to address the issue because Pennington failed to properly preserve it for appeal. See *Williams*, 275 Kan. at 288-89.

Pennington's argument that his Sixth Amendment rights were violated is based on the theory that the jailhouse informant became an agent of the State when the jailhouse informant agreed to cooperate with police to get more information from Pennington. Testimony by a police informant of the defendant's incriminating statements made while in jail pending trial are not admissible if the information was obtained surreptitiously by prior arrangements between the police and the informant. Such testimony violates the defendant's Sixth Amendment right to counsel if a criminal prosecution has been commenced against the defendant. *State v. McCorgary*, 218 Kan. 358, 360, 362, 543 P.2d 952 (1975).

However, statements made by the defendant to fellow prisoners that occur without prior arrangements with law enforcement are admissible. *State v. Miesbauer*, 232 Kan. 291, 295,654 P.2d 934 (1982); *State v. Rouse*, 229 Kan. 600, 605-06, 629 P.2d 167 (1981); *McCorgary*, 218 Kan. at 361.

A criminal prosecution begins when a complaint is filed and a warrant is issued. K.S.A. 22-2301; *McCorgary*, 218 Kan. at 361. Pennington claims that his Sixth Amendment right to counsel attached when he was charged with burglary and attempted theft on May 30, 2000. The jailhouse informant first told police of Pennington's confession to Whitaker's murder on May 30, 2000. The jailhouse informant provided additional information to police on June 2 and June 5, 2000. Pennington was charged with Whitaker's murder on June 6, 2000.

The Sixth Amendment right to counsel is offense specific and does not attach to offenses that have not been charged. *Texas v. Cobb*, 532 U.S. 162, 172-74, 149 L. Ed. 2d 321, 121 S. Ct. 1335 (2001). When considering whether an offense has been charged, the court applies the test in *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932), evaluating whether each offense requires proof of a fact that the other does not. *Cobb*, 532 U.S. at 173. Previously charged offenses do not include new or

different offenses that are factually related to the previously charged offenses unless the newly charged offenses pass the *Blockburger* test. *Cobb*, 532 U.S. at 173-74.

*Cobb* is factually similar to this case. The defendant in *Cobb* was charged with burglary. While out on bond, the defendant confessed to his father that he had murdered the residents of the house he burglarized. The defendant's father informed police, who brought the defendant in for questioning about the murders. After waiving his *Miranda* rights, the defendant confessed to killing the residents. The defendant was ultimately convicted of the murders, but his convictions were reversed by the Texas appellate court, which held that the Sixth Amendment right to counsel attached to the murder charges when the defendant was charged with burglary because the murder charge was factually related to the burglary charge. *Cobb*, 532 U.S. at 166-67.

The United States Supreme Court disagreed with the Texas court, applying the *Blockburger* test rather than the factually-related test to determine what was an included offense of the previously charged offense. *Cobb*, 532 U.S. at 173-74. Murder and burglary do not require proof of the same elements; therefore, the defendant's Sixth Amendment rights had not attached to the murder charges when he confessed to the police after being charged with burglary, even though both charges arose out of the same factually related events. *Cobb*, 532 U.S. at 174.

The same result occurs when the *Blockburger* test is applied to the charges of burglary and murder in Kansas. Burglary and murder require proof of different facts. We conclude that Pennington's Sixth Amendment right to counsel had not attached as to the murder charge when the jailhouse informant cooperated with police to solicit a confession from Pennington, although this was after Pennington had been charged with burglary. Consequently, Pennington's confession through the jailhouse informant did not violate his Sixth Amendment right to counsel, and the trial court did not abuse its discretion when it admitted the jailhouse informant's testimony.

## ADMISSION OF KNIFE

Next, Pennington argues that the trial court erroneously admit-

ted a knife into evidence. The admission of physical evidence is within the trial court's discretion. Subject to the exclusionary rules, appellate courts review the trial court's decision regarding the admission or exclusion of evidence to determine whether the trial court abused its discretion. *State v. Whitesell*, 270 Kan. 259, 276, 13 P.3d 887 (2000).

The admissibility of physical evidence is based on its relevance in connection with the accused and the crime charged. Unless physical evidence is clearly irrelevant, the object should be admitted, with the jury attributing such weight and effect as it sees fit. *Whitesell*, 270 Kan. at 277. Relevant evidence is any evidence "having any tendency in reason to prove any material fact." K.S.A. 60-401(b). The determination of relevancy is a matter of logic and experience, not a matter of law. Nevertheless, there must be some material or logical connection between collateral facts and the inference or result they are supposed to establish for them to be competent. *State v. Gardner*, 264 Kan. 95, 104, 955 P.2d 1199 (1998).

The knife at issue in this case is a 17-inch long folding knife with a 10¼ inch blade. Police found the knife at Pennington's girlfriend's residence. The knife had a leather sheath with a plastic insert. A KBI forensic biologist visually detected blood on the plastic insert and confirmed the presence of blood with a presumptive chemical test. A KBI DNA expert confirmed the presence of human blood but was unable to identify the blood donor because there was insufficient DNA to complete the analysis.

The jailhouse informant told police that Pennington confessed to strangling Whitaker with a cord, then cutting his throat with a folding knife that was almost as big as a sword when opened. The knife admitted by the State fits the description given by the jailhouse informant. The jailhouse informant's testimony establishes a material or logical connection between the knife as a collateral fact and the inference that it was the weapon used to cut Whitaker's throat. See *Gardner*, 264 Kan. at 104. In addition, it corroborated the information given by the informant and bolstered his credibility.

This connection is not diminished by the inconclusive DNA testing or the fact that the knife was found in Pennington's girlfriend's apartment. Rather, those facts bear only on the weight, not the admissibility. See *Gardner*, 264 Kan. at 104-05; *State v. Nicholson*, 225 Kan. 418, 420, 590 P.2d 1069 (1979). As a result, the knife is not clearly irrelevant and was properly admitted, allowing the jury to give it the weight it deemed appropriate based on its discovery at Pennington's girlfriend's residence and the blood analysis. See *Whitesell*, 270 Kan. at 277. The trial court did not abuse its discretion by admitting the knife.

## GRUESOME PHOTOGRAPHS

Pennington argues that the trial court erroneously admitted gruesome photographs that were unduly repetitive and prejudicial.

The admission of photographs in a murder case is within the trial court's discretion. The trial court's ruling will not be reversed on appeal unless the defendant demonstrates that the trial court abused its discretion. See *State v. Smallwood*, 264 Kan. 69, 83, 955 P.2d 1209 (1998).

Although the trial court should take special care to avoid the introduction of overly gruesome autopsy photographs, photographs that illustrate the nature and extent of the wounds are admissible when they corroborate testimony or are relevant to the pathologist's testimony regarding the cause of death, even though they may be gruesome. The prosecution bears the burden of proving all of the elements of the crime charged regardless of whether the defendant concedes the cause of death. Consequently, photographs depicting the nature, extent, and number of wounds are generally relevant in a murder case. Photographs are erroneously admitted when they are unduly repetitious and add nothing to the State's case. *Smallwood*, 264 Kan. at 83-84.

Even if the trial court abused its discretion in admitting repetitive photographs, such error is not reversible error unless it affirmatively prejudices the defendant's substantial rights. *State v. Sherrer*, 259 Kan. 332, 344, 912 P.2d 747 (1996).

Pennington does not object to all of the photographs that were admitted into evidence. He objects to 7 of the 18 photographs of

the victim that were admitted. Those seven photographs depict the knife wound to the victim's throat and the wound to the victim's tongue. He claims that the photographs prejudiced the jury against him, causing it to convict him out of fear and outrage.

Pennington claims that these photographs are repetitive because there are other photographs of the neck wound that were admitted without his objection. Although there are other photographs of the neck wound, they are distinguishable from the photographs at issue because they include the ligature that caused the victim's death. The inclusion of photographs with and without the ligature is significant to distinguish between the cause of death by strangulation and the neck wound that was inflicted after the victim was dead. Similarity between photographs does not make them inadmissible per se. See *State v. Johnson*, 258 Kan. 475, 482, 905 P.2d 94 (1995).

The photographs at issue were used during the pathologist's testimony to explain the cause of death and the nature and timing of the knife wounds to the neck and throat. The photographs begin with an overview of the body as it was in the basement and proceed to a closeup of the knife wound to the victim's neck. The purpose for the photographs is to demonstrate the lack of blood splatter or clotting, which indicates that the victim's throat was cut after he was dead. The close-up photograph further demonstrates that the neck wound was inflicted by a knife rather than from tearing as a result of strangulation by a wire and that the neck wound was superficial and would not have caused the victim's death. The use of photographs showing multiple views of the same wound does not constitute an abuse of discretion when those views are used to orient the jury to the location of the wound and explain the pathologist's testimony regarding the character of the wound. *State v. Hickles*, 261 Kan. 74, 86-87, 929 P.2d 141 (1996).

Pennington also objected to one of the photographs of the victim's torso because it included a portion of the neck wound in the picture. The pathologist, however, used the photograph to show other wounds on the victim's body. The neck wound, which appears in the upper right corner of the photograph, is clearly not the focus of the photograph and is difficult to identify because of the frame of reference.

Finally, Pennington objected to the introduction of a photograph of the bottom side of the victim's tongue. This photograph demonstrates that the knife wound pierced through the victim's tongue rather than injuring only the top side of the tongue. Without this photograph, the jury may have been confused regarding the nature of the tongue wound.

Pennington relies on language from several cases in other states but fails to distinguish the weight of Kansas precedent, which has not reversed a defendant's conviction because of the introduction of gruesome photographs. In several cases, this court concluded that the trial court abused its discretion by admitting unduly gruesome and repetitive photographs but reversed the defendants' convictions on other grounds. See *State v. Adam*, 257 Kan. 693, 707-08, 896 P.2d 1022 (1995); *State v. Clark*, 218 Kan. 18, 23-24, 542 P.2d 291 (1975); *State v. Childers*, 217 Kan. 410, 417, 536 P.2d 1349 (1975); *State v. Boyd*, 216 Kan. 373, 378-79, 532 P.2d 1064 (1975). The common theme in these cases is that the photographs graphically displayed the victim's organs after the body was cut open during the autopsy.

In other cases, this court concluded that the trial court abused its discretion by admitting repetitive, gruesome photographs but determined that the error did not prejudice the defendants' substantial rights and affirmed the convictions. See *State v. Sherrer*, 259 Kan. at 342-44; *State v. Mayberry*, 248 Kan. 369, 383-84, 807 P.2d 86 (1991); *State v. Soles*, 224 Kan. 698, 701-02, 585 P.2d 1032 (1978); *State v. McCorgary*, 224 Kan. 677, 681, 585 P.2d 1024 (1978). In all of these cases, the court focused on the repetitive nature of the photographs. Although the photographs at issue in this case depict the same wounds as other photographs that were admitted, the photographs are not unduly repetitive because they demonstrate different characteristics of the wounds.

The photographs in this case illustrate the nature and extent of the wounds and were relevant to the pathologist's testimony regarding the cause of death. The photographs further corroborate other witnesses' testimony that Pennington strangled Whitaker and cut his throat after he was dead. Because the photographs depict the victim's actual injuries without showing invasive autopsy pro-

cedures and are probative to the issues, the trial court did not abuse its discretion by admitting them.

## USE OF CRIMINAL HISTORY TO INCREASE SENTENCE

Pennington argues that the trial court violated his constitutional rights by using his criminal history to increase his sentence. He claims that his criminal history should have been pled in the complaint and determined beyond a reasonable doubt by a jury.

Finding that Pennington had a criminal history score of B, the district court sentenced Pennington to life imprisonment for the first-degree murder conviction, 29 months for the burglary conviction with this sentence to run consecutive to the life sentence, 12 months for the misdemeanor theft conviction to run concurrent with the burglary sentence, and 6 months for the criminal damage to property conviction, also to run concurrent with the burglary sentence.

Review of this issue involves a question of law over which this court has de novo review. *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002).

The State argues that Pennington failed to preserve the issue for appeal because he did not object to his criminal history score. However, an appellate court may review a claim that the sentencing court erroneously included recognition of a prior conviction notwithstanding the defendant's failure to object to his or her criminal history score. K.S.A. 21-4721(e)(2); *State v. Pope*, 23 Kan. App. 2d 69, 79, 927 P.2d 503 (1996).

Pennington relies on *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). This issue, however, has previously been decided against Pennington. In *Ivory*, this court held that *Apprendi* does not apply when the sentence imposed is based on the defendant's criminal history score. 273 Kan. 44, Syl. The *Ivory* court noted that the United States Supreme Court carved out an exception for prior convictions and reasoned that a sentence within the presumptive sentencing range was not subject to being challenged on appeal pursuant to K.S.A. 21-4721(c)(1). 273 Kan. 44.

## USE OF JUVENILE ADJUDICATION TO INCREASE SENTENCE

Pennington further argues that the court violated his rights by using his juvenile adjudications to increase his sentence. He argues that the *Apprendi* exception for prior crimes requires a trial by jury to ensure that the defendant's right to due process is not infringed. Because juveniles are not given the right to trial by jury, the use of juvenile adjudications does not fall within the *Apprendi* exception. Like his argument regarding the use of his criminal history to increase his sentence, this issue is reviewed de novo. *State v. Hitt*, 273 Kan. 224, 235-36, 42 P.3d 732 (2002), *cert. denied* 537 U.S. 1104 (2003).

This issue has also been resolved against Pennington. In *Hitt*, this court held that juvenile adjudications "enjoy ample procedural safeguards" and are encompassed in the *Apprendi* exception for prior crimes. 273 Kan. at 236. Pennington's claim of error fails.

### CUMULATIVE ERRORS

Finally, Pennington claims that the trial court committed cumulative errors that denied him of his right to a fair trial. This court looks at the totality of the circumstances to determine whether cumulative errors have substantially prejudiced the defendant and denied his or her right to a fair trial. However, if the evidence is overwhelming against the defendant, no prejudicial error may be found based on the cumulative effect rule. *State v. Plaskett*, 271 Kan. 995, 1022, 27 P.3d 890 (2001).

Pennington has failed to establish any error by the trial court. Consequently, his claim of cumulative errors fails.

Affirmed.

LUCKERT, J., not participating.

GARY W. RULON, C.J., assigned