(236 P.3d 541)
No. 101,880

STATE OF KANSAS, *Appellee*, v. DONALD MICHAEL GAMBLE,
*Appellant.*

Opinion filed August 6, 2010.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Kristafer A. Ailslieger*, assistant solicitor general, and *Kendra M. Oakes*, legal intern, for appellee.

Before STANDRIDGE, P.J., GREEN and CAPLINGER, JJ.

GREEN, J.: Donald Gamble appeals from his jury trial convictions of five counts of rape in violation of K.S.A. 21-3502(a)(2) and five counts of aggravated criminal sodomy in violation of K.S.A. 21-3506(a)(1). First, Gamble argues that the trial court erred in admitting his videotaped confession because his statements were ob-

tained in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution. Nevertheless, because Gamble was in custody for a different offense and because no adversarial proceedings had been initiated against Gamble with regard to the offenses that are the subject of this case, the admission of Gamble's videotaped confession did not violate his Sixth Amendment right to counsel. Moreover, where the appellate record in this case establishes that Gamble initiated the contact with law enforcement in order to give his confession to the offenses under investigation and that Gamble voluntarily waived his *Miranda* rights before giving his confession, there was no violation of Gamble's Fifth Amendment right to counsel.

Finally, Gamble argues that the trial court erred in not granting his request for a preliminary hearing or a bill of particulars. We disagree. In light of the fact that Gamble had voluntarily waived his right to a preliminary hearing on the record 5 months before trial and that his retained counsel chose not to examine the prosecutor's file concerning the allegations against Gamble, we find no abuse of discretion in the trial court's decision to deny Gamble's request for a preliminary hearing or a bill of particulars, filed 2 days before the scheduled trial. Accordingly, we affirm.

In September 2007, A.F. (date of birth 01/07/1991) reported to the Anderson County Sheriff's Office that Gamble had repeatedly sexually assaulted her. A.F., who had been a friend of Gamble's daughter for many years, testified that the sexual assault began in 2001 when she was 10 years old and occurred approximately every 2 weeks until she and Gamble's daughter had an argument and no longer played together.

According to A.F., she and Gamble's daughter mended their relationship in 2003 and, by December 2003, Gamble had convinced her "to go back to the old ways." A.F. testified that around December 19 or 20, 2003, Gamble performed oral sex on her and penetrated her vagina with his fingers and his penis. A.F. further testified that Gamble sexually assaulted her again between January 4 and 7, 2004. According to A.F., Gamble continued to assault her every week or every other week when she stayed at his house.

When A.F. reported the sexual assaults to the Anderson County Sheriff's Office in September 2007, she told the interviewing officer that she and Gamble had smoked marijuana together and marijuana had been used in Gamble's house in the last few days. Based on this information, Detective Vern Valentine applied for and obtained a search warrant for Gamble's house. Officers found marijuana in Gamble's house and car and also recovered evidence relating to the sex crimes in Gamble's bedroom.

Gamble was arrested on a drug charge by Undersheriff Max Skelton and taken to jail on September 11, 2007. The *Miranda* form filled out by Skelton stated that Gamble requested to have a lawyer. Valentine testified, however, that after Gamble was arrested on the drug charge, Gamble told Skelton that he was unsure whether he needed an attorney, so Skelton wrote that Gamble had invoked his right to an attorney.

That same day, after Gamble had told Skelton that he was unsure whether he needed an attorney, Valentine went to talk with Gamble about A.F.'s sexual assault allegations. Valentine testified that he talked with Gamble for less than 10 minutes and did not want to talk about the drug charge. During their conversation, Gamble asked whether he needed an attorney. Valentine testified that he told Gamble, "If I [were] you, I'd probably have one." According to Valentine, Gamble stated that he did not know if he wanted an attorney. Valentine then told Gamble that Gamble should consider whether he wanted an attorney and that Valentine could get back with him when he had his first appearance for his drug charge in the next couple of days.

Valentine testified that on September 13, 2007, the day of Gamble's first appearance on the drug charge, he received a phone call at home that Gamble had stated that he wanted to talk with Valentine. When he testified in this case, Valentine could not remember who called him, but he believed it was one of the jailers or a secretary. Valentine went to the courthouse to talk with Gamble. Valentine testified that he told Gamble that he was going to be appointed an attorney in the next few minutes but that Gamble stated, "[T]hat's all right. I still want to talk to you whether I have an attorney or not. I need to get this taken care of."

According to Valentine, he then went back to his office and set up recording equipment while Gamble had his first appearance on the drug case. At the hearing, Gamble was appointed an attorney to represent him on the drug case.

After Gamble's first appearance on the drug case, the jailer brought Gamble to Valentine's office. Valentine went over Gamble's *Miranda* rights, and Gamble waived those rights. During the videotaped interview, Gamble confessed to repeatedly sexually assaulting A.F.

On September 25, 2007, the State charged Gamble with 128 separate counts of rape and aggravated criminal sodomy. In January 2008, Gamble's appointed attorney requested a determination of Gamble's competency under K.S.A. 22-3202. The trial court ordered Gamble to submit to an examination and evaluation to determine his competency to stand trial. The conclusion from the psychological evaluation was that Gamble was competent to stand trial in that he appeared to comprehend the charges against him and had the ability to aid his attorney in his own defense.

Gamble later moved to suppress his statements during the September 11, 2007, interview with Valentine. Gamble argued that the interview was in violation of his rights because he had previously requested counsel after attempted interviews by law enforcement and an attorney had been appointed to represent him. Gamble further argued that he has a low I.Q. and did not understand the *Miranda* warnings or the impact of his statements. After holding an evidentiary hearing, the trial court denied Gamble's motion to suppress.

The trial in this case was held over 3 days in September 2008. On the second day of trial, the State filed an amended complaint, which listed five counts of rape and five counts of aggravated criminal sodomy. The dates when the crimes allegedly occurred were amended to coincide with A.F.'s testimony. The remainder of the charges against Gamble were dismissed.

The jury found Gamble guilty of five counts of rape and five counts of aggravated criminal sodomy. The trial court sentenced Gamble to 778 months in prison.

*Motion to Suppress*

First, Gamble contends that the trial court erred in admitting his videotaped interview with a police detective because the statements were obtained in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution.

Normally, in reviewing a trial court's decision regarding the suppression of a confession, an appellate court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard. *State v. Cofield*, 288 Kan. 367, 369, 203 P.3d 1261 (2009).

*Sixth Amendment Right to Counsel*

The Sixth Amendment under the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." The Sixth Amendment right to counsel attaches on the filing of formal charges, indictment, or information; on arraignment; or on arrest on warrant and arraignment thereon. *State v. Appleby*, 289 Kan. 1017, 1044, 221 P.3d 525 (2009) (citing *Brewer v. Williams*, 430 U.S. 387, 398, 51 L. Ed. 2d 424, 97 S. Ct. 1232, *reh. denied* 431 U.S. 925 [1977].)

The Sixth Amendment right to counsel is offense specific, cannot be invoked once for all future prosecutions, and does not attach to offenses that have not been charged. *Appleby*, 289 Kan. at 1044; *State v. Pennington*, 276 Kan. 841, 845, 80 P.3d 44 (2003). Therefore, " ' "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached are, of course, admissible at the trial of those offenses." [Citation omitted.]' " *Appleby*, 289 Kan. at 1044 (citing *McNeil v. Wisconsin*, 501 U.S. 171, 115 L. Ed. 2d 158, 111 S. Ct. 2204 [1991]).

The United States Supreme Court in *Texas v. Cobb*, 532 U.S. 162, 168-69, 149 L. Ed. 2d 321, 121 S. Ct. 1335 (2001), has recognized that when the Sixth Amendment right to counsel attaches, it "encompass[es] offenses that, even if not formally charged, would be considered the same offense under the *Blockberger* [*v. United States*, 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932)] test." The *Blockberger* test requires a court to evaluate whether each offense requires proof of a fact that the other does not. Pre-

viously charged offenses do not encompass new or different offenses that are factually related to the previously charged offenses unless the newly charged offenses pass the *Blockberger* test. *Pennington*, 276 Kan. at 845-46.

Here, Gamble's Sixth Amendment right to counsel had not attached as to the sexual offenses when he was interviewed by Valentine and gave his videotaped confession. Gamble had been charged only with the drug offense and not with the sexual offenses when he was interviewed by Valentine. No adversarial judicial proceedings had been initiated against Gamble with regard to the sex offenses. Further, the drug offense and the sexual offenses cannot be considered the same offense under the *Blockberger* test because they require proof of different facts. As a result, the admission of Gamble's videotaped confession did not violate his Sixth Amendment right to counsel.

### Fifth Amendment Right to Counsel

"The Fifth Amendment to the United States Constitution guarantees the right against self-incrimination, including the right to have a lawyer present during custodial interrogation and the right to remain silent. [Citation omitted.]" *State v. Walker*, 276 Kan. 939, 944, 80 P.3d 1132 (2003). In contrast to the Sixth Amendment right to counsel, the Fifth Amendment right to counsel, which is protected by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, *reh. denied* 385 U.S. 890 (1966), is not offense specific. *Appleby*, 289 Kan. at 1044. "Once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present. [Citation omitted.]" (Emphasis added.) *McNeil*, 501 U.S. at 177.

Quoting from the United States Supreme Court's decision in *McNeil*, our Supreme Court in *Appleby* explained that a second layer of prophylaxis had been added for the Fifth Amendment right to counsel as follows:

"*Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 101 S. Ct. 1880, *reh. denied* 452 U.S. 973 [1981],

'established a second layer of prophylaxis for the *Miranda* right to counsel: Once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached for further interrogation "until counsel has been made available to him," [*Edwards*,] 451 U.S. at 484-485,—which means, we have most recently held, that counsel must be present, [citation omitted]. If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards. This is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights," [citation omitted].' *McNeil*, 501 U.S. at 176-77." *Appleby*, 289 Kan. at 1044-45.

The *McNeil* Court explained that an accused's assertion of the Sixth Amendment right to counsel does not invoke the Fifth Amendment right to counsel as a matter of fact. 501 U.S. at 178. " 'One might be quite willing to speak to the police without counsel present concerning many matters, but not the matter under prosecution.' " *Appleby*, 289 Kan. at 1046 (quoting *McNeil*, 501 U.S. at 178); see also *Rhode Island v. Innis*, 446 U.S. 291, 300, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980) (*Miranda*'s safeguards and procedural protection of Fifth Amendment rights "are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation.").

The Fifth Amendment right to counsel applies only when the accused has expressed his or her wish for the particular sort of attorney assistance that is the subject of *Miranda*. *Appleby*, 289 Kan. at 1046. " 'It requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*.' " 289 Kan. at 1046 (quoting *McNeil*, 501 U.S. at 178).

When a defendant argues that he or she asserted the assistance of an attorney, the timing and the content and context of a reference to counsel may help determine whether there has been an unambiguous assertion of the right to the assistance of an attorney in dealing with a custodial interrogation by law enforcement officers. *Appleby*, 289 Kan. 1017, Syl. ¶ 13.

Gamble maintains that he invoked his Fifth Amendment right to counsel when Deputy Skelton *Mirandized* him on September

11, 2007. Gamble contends that once he invoked this Fifth Amendment right to counsel, Valentine lacked the authority to question him concerning any of the allegations contained in the probable cause affidavit submitted in support of the application for search warrant.

The trial court in this case found that Gamble requested to have a lawyer on September 11, 2007. The trial court looked to the *Miranda* form filled out by Deputy Skelton, which states that Gamble requested to have a lawyer. Although Valentine testified that Gamble had merely told Skelton that he was unsure whether he needed an attorney, the trial court determined that without Skelton's testimony, the notation on the *Miranda* form that Gamble requested an attorney would be the finding in the case. The State concedes that the *Miranda* form provides substantial competent evidence to support the trial court's conclusion that Gamble requested an attorney on September 11, 2007.

Moreover, the record indicates that Gamble made his statement concerning a request for an attorney when he was read his *Miranda* warnings and asked to make a statement in the drug case. Thus, it appears that Gamble's statement concerning an attorney was made in dealing with a custodial interrogation type of situation and that *Miranda*'s safeguards and procedural protections of Fifth Amendment rights were applicable.

In denying Gamble's motion to suppress his videotaped confession, the trial court focused on the fact that Gamble had reinitiated contact with Valentine and waived his right to have counsel present:

"[L]ooking at the totality of all the different circumstances, the fact that Mr. Gamble initiated his contact with the officer even after the officer advised him in his opinion he ought to get himself an attorney, Mr. Gamble still took upon himself that he wanted to talk to the officer and the officer *Mirandized* him again and Mr. Gamble went ahead and waived his right to have counsel present and made his statement to the officer. So the Court would find the statement would be admissible for purposes of this [trial]."

The law is well established that once a suspect invokes his or her Fifth Amendment right to counsel, interrogation must cease. Nevertheless, questioning of the suspect can be resumed if a lawyer

has been made available *or the suspect reinitiates conversation.* *Edwards*, 451 U.S. at 482, 484-85; *State v. Mattox*, 280 Kan. 473, 481, 124 P.3d 6 (2005).

In determining whether an accused has waived his or her previously asserted Fifth Amendment right to counsel, an appellate court must determine whether the accused (1) initiated further discussions with law enforcement and (2) knowingly and intelligently waived the previously asserted right. The State has the burden to show that later events indicated a waiver of a previously asserted right and that the waiver was knowing, voluntary, and intelligent under the totality of the circumstances. *Walker*, 276 Kan. at 946-47. A valid waiver of a previously asserted Fifth Amendment right to counsel cannot be established by showing only that the suspect responded to further police-initiated custodial interrogation even if he or she has been advised of his or her rights. *Edwards*, 451 U.S. at 484. The accused's statements must show a willingness and a desire for a generalized discussion about the investigation and not merely be a necessary inquiry arising out of the incidents of the custodial relationship. *Oregon v. Bradshaw*, 462 U.S. 1039, 1044-46, 77 L. Ed. 2d 405, 103 S. Ct. 2830 (1983); *Walker*, 276 Kan. at 946-47.

Here, as the trial court found, the record shows that Gamble initiated the discussions with Valentine on September 13, 2007, about the alleged sexual abuse. Although Valentine had previously told Gamble his opinion that Gamble should get an attorney, Gamble asked to talk with Valentine when Gamble returned to the courthouse for his first appearance on the drug charge. Upon arriving at the courthouse at Gamble's request, Valentine told Gamble that he was going to be appointed an attorney in the next few minutes and asked if Gamble still wanted to talk with him. Gamble said that he did want to talk with Valentine. Thus, not only did Gamble initiate the conversation with Valentine, but Valentine also made sure that Gamble still wanted to talk with him even without Gamble's appointed attorney.

When Gamble was later brought to Valentine's office after his hearing on the drug charge, Valentine obtained a knowing and voluntary waiver of Gamble's right to counsel. Gamble specifically

told Valentine that he was willing to talk to Valentine without an attorney even though he had been appointed an attorney. Gamble stated that he had "thought about this a lot and if it's going to help me and others, yes I want to talk about this." Valentine read Gamble his *Miranda* rights, and Gamble signed a written waiver of those rights. Gamble then proceeded to talk freely and openly with Valentine about his repeated sexual abuse of A.F. Gamble's initiation of the conversation with Valentine and his statements to Valentine, especially those before the videotaped confession, show Gamble's willingness and desire for a discussion with law enforcement about his repeated sexual abuse of A.F.

Nevertheless, Gamble argues that his videotaped confession given on September 13, 2007, was tainted by Valentine's contact with him on September 11, 2007, which was in violation of his Fifth Amendment rights.

As the State points out, however, Gamble's taint argument was never properly presented to the trial court. Before the trial court, Gamble seemed to argue that his September 13, 2007, videotaped confession should be suppressed because his right to counsel, on that date, had been violated. Gamble emphasized that he had invoked his right to counsel and that counsel had been appointed when he was interviewed on September 13, 2007. While that may be a similar theory, Gamble never raised his current theory with the trial court that Valentine's contact with Gamble on September 11, 2007, tainted any and all later contact with law enforcement about the sexual abuse allegations, even when Gamble initiated the contact with law enforcement. Because Gamble never gave the trial court an adequate opportunity to consider his current argument, we will not consider this issue. See *State v. Warledo*, 286 Kan. 927, 938, 190 P.3d 937 (2008) (Issues not raised before the trial court cannot be raised on appeal.); *State v. Gant*, 288 Kan. 76, 82, 201 P.3d 673 (2009) (Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review.).

Moreover, even if this court were to address Gamble's "taint" argument, it would fail because Gamble cites no authority for his argument that Valentine's brief encounter with him on September

11, 2007, after he had invoked his Fifth Amendment right to counsel rendered his September 13, 2007, videotaped confession inadmissible. In our research, we have found cases where our Supreme Court has applied a "taint" analysis when an accused has given a statement, which was coerced or obtained in violation of *Miranda*, to law enforcement officers and then later waives his or her *Miranda* rights and gives another statement. See *State v. Swanigan*, 279 Kan. 18, 106 P.3d 39 (2005); *State v. Hebert*, 277 Kan. 61, 82 P.3d 470 (2004).

Here, law enforcement officers never obtained any statements from Gamble concerning the alleged sexual abuse before he voluntarily contacted Valentine on September 13, 2007, and gave his videotaped confession. Even assuming that Valentine's attempt to talk with Gamble on September 11, 2007, about the alleged sexual abuse was improper, Valentine ended the contact after Gamble questioned whether he needed an attorney and Valentine gave his opinion that Gamble should get an attorney. The contact between Valentine and Gamble on September 11, 2007, was brief, and Gamble never provided any information about the alleged sexual abuse. Valentine made no further contact with Gamble until 2 days later when Gamble sent his message that he wanted to talk with Valentine. Even though he was appointed counsel in the drug case, Gamble told Valentine that he wanted to talk with him about the alleged sexual abuse and executed a written waiver of his *Miranda* rights.

In light of the fact that Gamble voluntarily initiated the contact with Valentine on September 13, 2007, followed by the giving of proper *Miranda* warnings 2 days after any contact had been made with him about the alleged sexual abuse, we find that Valentine's contact with Gamble on September 11, 2007, did not taint his videotaped confession on September 13, 2007. See *Peterka v. State*, 640 So. 2d 59 (Fla. 1994), *cert. denied* 513 U.S. 1129 (1995) (holding that even if an officer's questioning violated the appellant's right to remain silent, no taint carried over to the appellant's later statements to law enforcement where the appellant initiated the contact). Our Supreme Court has held that where a suspect on his or her own initiative requests an opportunity to give a state-

ment, it cannot be said to be either a response to or a product of the police officer's words or action. *State v. Dudley*, 264 Kan. 640, 645, 957 P.2d 445 (1998). Gamble freely and voluntarily initiated the contact with Valentine on September 13, 2007, and decided to give his confession after he was advised of his *Miranda* warnings. As a result, the trial court properly denied Gamble's motion to suppress his statements.

*Motion for Preliminary Hearing or Bill of Particulars Standard of Review*

Finally, Gamble argues that the trial court violated his right to a fair trial by refusing his request for a preliminary hearing or a bill of particulars.

The trial court's refusal to grant a continuance so that a preliminary hearing can be held, after a defendant has voluntarily waived his right to a preliminary hearing, is reviewed for an abuse of discretion. *State v. McCollum*, 209 Kan. 498, 500-01, 496 P.2d 1381 (1972). Further, an appellate court reviews the trial court's denial of a defendant's request for a bill of particulars for an abuse of discretion. *State v. Young*, 26 Kan. App. 2d 680, 683, 11 P.3d 55 (1999). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Gant*, 288 Kan. at 81-82.

*Preliminary Hearing*

The record in this case demonstrates that Gamble appeared before the trial court in April 2008 and voluntarily waived his right to a preliminary hearing. The trial court addressed Gamble personally and clearly informed him that he had a right to a preliminary hearing on the felony charges in this case. Nevertheless, Gamble chose to waive his right to a preliminary hearing. See K.S.A. 22-2902(4) (defendant may waive preliminary hearing); *McCollum*, 209 Kan. at 500. Gamble acknowledged that he was waiving his right to a preliminary hearing freely, knowingly, and voluntarily and upon advice of his counsel.

Nearly 5 months after he waived preliminary hearing and 2 days before Gamble's scheduled trial, Gamble moved for a preliminary hearing. Gamble argued that his waiver of preliminary hearing was made on the advice of his previous court-appointed counsel and was not knowingly and intelligently made, that a preliminary hearing would be useful to all parties and would serve judicial economy, and that a preliminary hearing might lead to a plea agreement.

The day after Gamble moved for a preliminary hearing, the trial court held a hearing. Gamble's attorney further argued that, in the complaint, the alleged incidents had not been narrowed down to a particular day and that he had not been able to access some of the evidence and discovery in the case turned over to him by Gamble's previous defense counsel. The State argued, however, that there was substantial authority that the alleged sexual abuse did not have to be narrowed down to a single day.

In questioning defense counsel about the necessity for a preliminary hearing or for a bill of particulars, the trial court learned that defense counsel had not gone to the county attorney's office to look at the file and determine whether he had everything that was needed in the case. The trial court found that there was a valid waiver of preliminary hearing by Gamble at the hearing in April and denied Gamble's motion for a preliminary hearing.

Based on the appellate record in the present case, we find no abuse of discretion in the trial court's denial of Gamble's request for a preliminary hearing. The fact that Gamble retained counsel late in the case (retained counsel entered an appearance less than 1 month before trial) and that the retained counsel had not adequately prepared for trial did not make Gamble's waiver of preliminary hearing invalid. Gamble had entered a knowing and voluntary waiver of his right to a preliminary hearing at the April hearing.

Moreover, Gamble's decision to waive his right to a preliminary hearing could likely have been a strategic decision to enter into plea negotiations. If a preliminary hearing was held and the evidence warranted being bound over on additional or more serious charges, Gamble would have been in a less advantageous position during plea negotiations. See *State v. Pioletti*, 246 Kan. 49, Syl. ¶ 4, 785 P.2d 963 (1990) ("Under K.S.A. 22-2902, a magistrate may

bind a defendant over on any felony he or she has probable cause to believe has been committed whether or not that particular felony has been charged in the information upon which the preliminary hearing was held.").

Because Gamble voluntarily waived his right to a preliminary hearing, a preliminary hearing was not required, and there was no abuse of discretion in the trial court's decision. See *McCollum*, 209 Kan. at 501 (holding that trial court's failure to grant a continuance on the morning of trial so that a preliminary hearing could be held was not abuse of discretion; preliminary hearing was not required where defendant had voluntarily waived his right to preliminary hearing and continuance would serve no useful purpose).

### Request for Bill of Particulars

K.S.A. 22-3201(f) gives the trial court discretion, on written motion of the defendant, to require the prosecuting attorney to provide the defendant with a bill of particulars:

"When a complaint, information or indictment charges a crime but fails to specify the particulars of the crime sufficiently to enable the defendant to prepare a defense the court may, on written motion of the defendant, require the prosecuting attorney to furnish the defendant with a bill of particulars. At the trial the state's evidence shall be confined to the particulars of the bill."

Here, in denying Gamble's request for a bill of particulars, the trial court found that the complaint was sufficient. The trial court found that the complaint stated each crime in the language required by the statute for that particular offense. Further determining that defense counsel had the opportunity to review the State's file to determine whether the evidence complied with the complaint, the trial judge stated as follows:

"If for whatever reason defense counsel hasn't chosen to go and view the county attorney's file to make sure the evidence is there to match up on those particular dates, I'm not going to get involved in telling defense counsel how to do his job.

"Do not ask for a bill of particulars if you're not going to look at the file and discover it. I think what you have to find out is whether or not it complies with the complaint. You're asking in your motion for an amended complaint or bill of particular and time and place of the alleged crime, yet you're telling the Court that you haven't looked at the evidence. The Court's going to deny the motion for bill of particulars."

We find no abuse of discretion in the trial court's denial of Gamble's request for a bill of particulars. In *Young*, 26 Kan. App. 2d at 683, this court held that the trial court correctly concluded that a bill of particulars was unnecessary when the defendant had access to all of the State's evidence. This court noted that the Johnson County District Attorney's Office had an "open file" policy and that the defendant had requested a bill of particulars 6 months into the case and after full discovery. Here, the record demonstrates defense counsel had access to the Anderson County District Attorney's file, but yet no request for a bill of particulars was made until 1 year after Gamble was charged and 2 days before trial was scheduled to begin. As the State points out, it became clear at the hearing on the motion to suppress that defense counsel simply had not made any effort to review the State's file. As a result, Gamble's argument on this issue fails.

Affirmed.