NOT DESIGNATED FOR PUBLICATION

No. 114,305

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

EDWARD MCCRANIE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed June 24, 2016. Affirmed.

*Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Kristen B. Patty*, of Wichita, for appellee.

Before MALONE, C.J., BUSER and BRUNS, JJ.

*Per Curiam*:  This is an interlocutory appeal filed by the State pursuant to K.S.A. 2015 Supp. 22-3603. The State appeals the district court's ruling denying the prosecutor's motion to admit inculpatory statements Edward McCranie made to Kansas Highway Patrol Trooper Tanner Gleason. Having reviewed the record on appeal and considered the parties' arguments, we affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

On January 15, 2015, McCranie was charged with possession of methamphetamine, a severity level 5 nonperson felony, in violation of K.S.A. 2015 Supp. 21-5706(a), possession of marijuana, a class A nonperson misdemeanor, in violation of K.S.A. 2015 Supp. 21-5706(b)(3), and possession of drug paraphernalia, a class A nonperson misdemeanor, in violation of K.S.A. 2015 Supp. 21-5709(b)(2).

Prior to trial, McCranie moved to exclude incriminating statements he made to the arresting officer, Trooper Gleason, after he invoked his right to counsel. In response, the State sought a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), to determine the voluntariness of McCranie's statements.

On July 9, 2015, the district court held a hearing on the State's motion. Trooper Gleason was the only witness. According to Trooper Gleason, on January 7, 2015, he observed a vehicle parked on an on ramp to I-70 in Geary County. Concerned that the driver was in need of assistance, Trooper Gleason stopped his patrol car and approached the driver, McCranie, who was the only occupant in the vehicle.

While speaking with McCranie, Trooper Gleason smelled the odor of marijuana coming from the vehicle and saw in plain view a baggie of marijuana in the car. Trooper Gleason asked McCranie if there were any other drugs inside the vehicle. After responding in the negative, McCranie told Trooper Gleason the marijuana did not belong to him and "he believed it was possibly his sister's because his sister had been driving the vehicle and she had borrowed the vehicle from a friend." Upon the trooper learning that the vehicle had been reported stolen in Colorado, he began to "ask [McCranie] questions." In response, McCranie gave the trooper a false name and refused to identify himself. Trooper Gleason placed McCranie under arrest.

2

While seated in Trooper Gleason's patrol car after his arrest, McCranie was advised of his rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). According to the trooper, McCranie "immediately told me he wanted to talk to a lawyer." According to Trooper Gleason, he "told [McCranie] that was okay, but he would just still have to properly identify himself." Trooper Gleason advised, "[Y]ou won't even get in front of a judge until we figure out who you are." McCranie, however, still refused to provide any information. At some point during this conversation, Trooper Gleason indicated that he was not going to answer any of McCranie's questions about the charges against him unless he waived his rights.

Trooper Gleason collected the marijuana from inside the vehicle and then searched it based on the probable cause of finding contraband in plain view and the odor of marijuana. During this time, another officer, referred to as Inspector French, arrived at the scene and spoke with McCranie for about 10 minutes. The content of this conversation is unknown.

Trooper Gleason transported McCranie to jail. During the trip, Trooper Gleason again asked McCranie for his name and he attempted to elicit "[b]asic information about identifiers and stuff." But McCranie rebuffed all of the trooper's questions. Trooper Gleason also told McCranie, without success, that he would not charge him with obstruction if McCranie divulged his identity before they went inside the jail. Finally, in another effort to obtain McCranie's identification, Trooper Gleason "bribed him with a cigarette" in the parking lot of the jail. This tactic was successful, and when the cigarette was lit, McCranie properly identified himself.

Once inside the jail, Trooper Gleason began completing some forms, and while he was engaged in this task, McCranie began "to ask [him] questions about the charges and what [he] found inside the vehicle." According to Trooper Gleason:

3

"I informed [McCranie] that he said he wanted to talk to a lawyer, and I wasn't going to speak with him. He said, I don't want to talk to a lawyer now and I'll talk to you. So . . . I read him his *Miranda* rights again, and he agreed to speak with me.

. . . .

"He [then] told me he believed that his sister's boyfriend had stolen the car, and that it wasn't him. And I asked him how often he smokes methamphetamine. He said every once in a while. And I explained to him what I found, a methamphetamine pipe, the marijuana inside the car, and I asked him if it was his, and he said it was."

Trooper Gleason indicated that while he reread McCranie his *Miranda* rights, he did not have him sign a waiver form because "I never have before . . . [and] I didn't know they were available."

At the conclusion of the testimony, the State urged the district court to admit McCranie's incriminating statements because they were freely and voluntarily provided. While the prosecutor acknowledged that McCranie had invoked his right to counsel, he insisted that McCranie voluntarily waived this previously asserted right when he initiated communication with Trooper Gleason "not only about what his charges were, but also the circumstances and the items within the vehicle."

Defense counsel, on the other hand, argued that McCranie's questions about the charges against him did not qualify as a knowing, intelligent, and voluntary waiver of his previously asserted right to counsel because his questions did not "'evince "a willingness and a desire for a generalized discussion about the investigation."'" Instead, defense counsel asserted that McCranie merely sought information "'arising out of the incidents of the custodial relationship.'" Moreover, defense counsel contended that even if McCranie did initiate further discussions with the police, any waiver was not voluntary because it was elicited by Trooper Gleason's decision to wrongfully withhold information to which McCranie was entitled in order to elicit a *Miranda* waiver.

4

The district court denied the State's motion to admit the statements McCranie made after his initial invocation of his right to counsel because subsequent events did not indicate a knowing, voluntary, and intelligent waiver of the previously asserted right. District Judge Steven Hornbaker explained:

> "[H]ere's the problem. The officer isn't the one who has the right—the Fifth Amendment right in this case. Mr. McCranie's questions were legitimate. There was no reason the officer couldn't answer the questions, he just chose not to. He did not—he did not—he—instead of answering Mr. McCranie's questions, he invoked—he said, you invoked, so I can't answer any questions. And I think that happened a number of times, from what I understand in the testimony.
>     "Given the circumstances of this case, and the totality of the circumstances, the Court finds that the . . . later waiver . . . was not made knowing, intelligently, and voluntarily; and, therefore, any statements Mr. McCranie made to the effect of owning the marijuana, it was his, etcetera, the methamphetamine, are not admissible."

The State filed a timely notice of interlocutory appeal.

ANALYSIS

On appeal, the State makes two arguments in support of its contention that the district court committed reversible error when it suppressed McCranie's inculpatory statements. First, the State asserts: "The trooper's questioning of the defendant for his name does not constitute an interrogation, thus it is not protected under the rules of *Miranda*." Second, the State argues: "The defendant re-initiated contact with law enforcement and waived his *Miranda* rights."

A dual standard is used when reviewing the suppression of an accused's statements. *State v. Garcia*, 297 Kan. 182, 186, 301 P.3d 658 (2013); see *State v. Lewis*, 299 Kan. 828, 835, 326 P.3d 387 (2014) (applying bifurcated standard when determining whether an interrogation is custodial in nature). In reviewing a district court's ruling on a

5

motion to suppress statements, the appellate court reviews the factual underpinnings of the decision under a substantial competent evidence standard. The ultimate legal conclusion drawn from those facts is reviewed de novo. The appellate court does not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. *Garcia*, 297 Kan. at 186.

"The Fifth Amendment to the United States Constitution guarantees the right against self-incrimination, including the right to have a lawyer present during custodial interrogation and the right to remain silent." *State v. Walker*, 276 Kan. 939, 944, 80 P.3d 1132 (2003). Here, the parties agree that upon receiving *Miranda* warnings, McCranie clearly and unambiguously invoked his Fifth Amendment right to counsel and Trooper Gleason understood McCranie's desire for a lawyer's assistance.

The State spends the majority of its brief arguing that a law enforcement officer may question a defendant about his or her identity without violating the *Miranda* rules applicable to custodial interrogation. McCranie counters that this argument is a "'red herring'" because the district court did not deny admission of McCranie's statements on this basis.

Our reading of the district court's ruling confirms the district court did not suppress any incriminating statements made at the jail due to the trooper's persistent inquiries about McCranie's identity. Accordingly, we conclude the State's first argument is not meritorious because it is not relevant to the reason for the district court's suppression ruling.

The State's second argument, consisting of one paragraph, is pertinent to the district court's ruling. The State asserts that Trooper Gleason only obtained the incriminating statements after McCranie reinitiated contact and then waived his previously asserted *Miranda* rights. McCranie responds that the trooper coerced the

6

waiver by declining to inform the defendant of the charges against him unless he waived his *Miranda* rights, and McCranie's reinitiation of contact was not an effort to have a generalized discussion of the investigation.

Once a defendant has invoked his or her right to counsel, there may not be further questioning unless a lawyer has been made available or the defendant (1) initiated further discussions with the police and (2) knowingly and intelligently waived the previously asserted right. See *State v. Aguirre*, 301 Kan. 950, 961, 349 P.3d 1245 (2015), *cert. denied* 136 S. Ct. 895 (2016); *State v. Mattox*, 280 Kan. 473, 481, 124 P.3d 6 (2005), *cert. denied* 547 U.S. 1197 (2006); *State v. Robertson*, 279 Kan. 291, 301, 109 P.3d 1174 (2005); *Walker*, 276 Kan. at 946-47. It is the State's burden to prove that the defendant validly waived his or her previously asserted Fifth Amendment right to counsel. *State v. Gamble*, 44 Kan. App. 2d 357, 366, 236 P.3d 541 (2010), *rev. denied* 291 Kan. 915 (2011).

Our jurisprudence provides that the State may not satisfy its burden by simply showing that the defendant responded to further police-initiated custodial interrogation after being again advised of his or her rights. 44 Kan. App. 2d at 366 (citing *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S. Ct. 1880, 68 L. Ed. 2d 378, *reh. denied* 452 U.S. 973 [1981]). Instead, the State must prove that the defendant initiated the contact through his or her own statements, and the "statements must show a willingness and a desire for a generalized discussion about the investigation and *not merely be a necessary inquiry arising out of the incidents of the custodial relationship*." (Emphasis added.) *Gamble*, 44 Kan. App. 2d at 366 (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S. Ct. 2830, 77 L. Ed. 2d 405 [1983]; *Walker*, 276 Kan. at 947).

When the evidence demonstrates that the defendant initiated communications with the police, the court must then determine whether a valid waiver of the right to counsel occurred, *i.e.*, ""whether the purported waiver was knowing and intelligent and found to

be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities."' [Citation omitted.]" *Mattox*, 280 Kan. at 482. Such a determination ""depends upon 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.'" [Citations omitted.]'" 280 Kan. at 482.

In this case, Judge Hornbaker premised his ruling upon his determination that the questions McCranie posed to Trooper Gleason were merely inquiries arising out of the incidents of the custodial relationship and did not evince a willingness or desire for a generalized discussion about the investigation. See *Gamble*, 44 Kan. App. 2d at 366. In its brief, the State essentially acknowledges this fact and also acknowledges the *quid pro quo* nature of McCranie's waiver: "The defendant agreed to waive those rights so the trooper could tell him his charges, and answer the defendant's questions about the items found in the vehicle."

On this record, we are not persuaded the State has shown that the district court erred in its suppression ruling. First, although McCranie did reinitiate contact, it is apparent his intention was limited to learning about the criminal charges and evidence against him. There was no proof suggesting that McCranie desired to discuss his involvement in possessing or using the drugs found in the vehicle without the presence of an attorney. Second, we agree with the district court that Trooper Gleason's refusal to disclose basic information regarding McCranie's charges unless he waived his *Miranda* rights was coercive and, therefore, involuntary. For these reasons, we find no error in the district court's suppression ruling.

Affirmed.

8