NOT DESIGNATED FOR PUBLICATION

No. 114,972

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MICHAEL MATTOX,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL A. RIOS, judge. Opinion filed February 9, 2018. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant, and *Michael K. Mattox, Sr.*, appellant pro se.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., STANDRIDGE, J., and STUTZMAN, S.J.

PER CURIAM: Michael Mattox appeals the district court's summary denial of his pro se K.S.A. 60-1507 motion. His principal claims are that his trial and appellate counsel were ineffective in failing to obtain or argue he should have obtained a psychological evaluation before trial and that his postconviction counsel was ineffective in failing to argue to the United States District Court for the District of Kansas that the Kansas Supreme Court erred in finding Mattox had voluntarily handed his written statement to the Topeka detectives. Finding no error by the district court, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2002, a jury found Mattox guilty, among other things, of aiding and abetting in the reckless second-degree murder of John Lane. Although the facts are fully set out in Mattox's direct appeal, *State v. Mattox*, 280 Kan. 473, 124 P.3d 6 (2005) (*Mattox I*), and his previous K.S.A. 60-1507 motion, *Mattox v. State*, 293 Kan. 723, 267 P.3d 746 (2011) (*Mattox II*), we briefly discuss the facts to give context to the issues raised by Mattox's current K.S.A. 60-1507 motion.

On October 11, 2001, officers from the Topeka Police Department responded to a report of gun shots around 3 a.m. The officers found a car stopped on a median of a Topeka roadway with the engine running and the driver, John Lane, slumped over the steering wheel with two gunshot wounds to his head. Officers found shell casings at the scene which suggested the shots were fired from a moving vehicle. Lane died a short time later at a hospital. *Mattox II*, 293 Kan. at 724.

About five days later, the Lawrence Police Department arrested Mattox on unrelated charges. At the police station, Mattox was read his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and he stated that he wanted to speak with a lawyer. While booking Mattox into jail on criminal trespass charges, Mattox continually told booking officer Mark Unruh that he had information he needed to tell him. Unruh told Mattox that he was not the person to talk to, but Mattox persisted and more than an hour later Unruh agreed to listen.

"Mattox then related information about three different murders, including Lane's. Mattox said that he had been riding in a car driven by Gigger at about 3 a.m. when another car had pulled up next to them; he said Gigger had been agitated because the car had been swerving behind them. Mattox said that Gigger had asked for Mattox's gun, which Mattox then took out of the glove compartment. Gigger took the gun and shot Lane. Unruh typed up what Mattox had told him; he read it back to Mattox to confirm its

2

accuracy. In the meantime, at Unruh's request, Mattox began writing out the story in his own handwriting. Mattox continued that handwritten version after he was taken to a cell, and Unruh left when his shift ended." *Mattox II*, 293 Kan. at 724-25.

Around 12:55 a.m., three Topeka Police detectives went to the Douglas County jail, set up a video camera in an interview room, and brought in Mattox. The detectives knew Mattox had written a statement and saw he was holding a paper when he came in. The detectives introduced themselves and told Mattox they were investigating the Lane murder. The officers did not read Mattox his *Miranda* rights.

Several minutes into the interview, the detectives and Mattox had the following exchange:

"'Mattox: I know I need to talk to a lawyer, because I know anything I say y'all are going to twist it. But I don't know, I don't know if the gangs are setting me up. I don't know, I need to collect my thoughts. You all won't let me make a phone call. There's people out there that I gotta . . .

"'Detective: Here's the thing. You know you have all your rights in place, okay?

"'Mattox: Huh?

"'Detective: You have all your rights.

"'Mattox: What's all my right?

"'Detective: (Over each other) Just like the TV show.

"'Mattox: (Over each other) So I'm not under arrest for it? Right.'" *Mattox I*, 280 Kan. at 477-78.

3

During the interview, Mattox disclosed that he and Gigger were heading to a friend's house to smoke marijuana when a car pulled up behind them and began driving erratically and tailgating. Gigger and Mattox believed that the driver might be a gang member and would harm them. At some point, Mattox took the gun, and the car passed them. Mattox realized the driver was not a gang member, but Gigger grabbed the gun out of Mattox's hand and repeatedly shot through the window and hit Lane. Mattox stated that he had given Gigger the gun that was now in a dumpster behind a strip mall in Lawrence. Towards the end of the interview, Mattox signed his handwritten statement, which largely followed the information he disclosed in the videotaped interview.

In relevant part, Mattox's direct appeal challenged whether the district court erred in admitting into evidence his statements made to Unruh and to the Topeka detectives. The Kansas Supreme Court found the district court did not err in finding Mattox's statements to Unruh admissible because substantial evidence supported the district court's conclusion that Mattox voluntarily initiated his conversation with Unruh. *Mattox II*, 293 Kan. at 724-25. As to the statements Mattox made to the detectives, the Kansas Supreme Court refused to address the merits of his reinvocation argument because it found Mattox had abandoned the argument by failing to adequately brief and address it during oral arguments. *Mattox I*, 280 Kan. at 492.

Mattox filed a pro se K.S.A. 60-1507 motion in September 2006, which the district court denied in February 2007 under the doctrine of res judicata for asserting claims regarding the suppression of his statements on which the Kansas Supreme Court had rendered a final judgment in *Mattox I*. Mattox then filed a second K.S.A. 60-1507 motion in the district court, arguing his appellate counsel was ineffective by abandoning his argument that he reinvoked his *Miranda* rights in his direct appeal to the Kansas Supreme Court. After conducting an evidentiary hearing, the district court found Mattox's appellate counsel ineffective and granted the motion.

4

Addressing Mattox's ineffective assistance of appellate counsel argument on appeal in *Mattox II*, 293 Kan. at 726-27, our Supreme Court held:

> "Mattox has the burden under *Strickland* [*v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984)] to show that his attorney's inadequate performance affected the result of the appeal. . . . In making that determination, because the defendant's constitutional right to consult an attorney was at issue, we would have had to have been able to conclude beyond a reasonable doubt that the error had not affected the trial's outcome."

The Supreme Court ultimately concluded that even if Mattox's statements to the detectives had been excluded, he had failed to persuade the court that it would have affected the outcome of the trial. *Mattox II*, 293 Kan. at 731.

Following *Mattox II*, Mattox filed a federal claim for habeas corpus relief pursuant to 28 U.S.C. § 2254 (2012), asserting that the Kansas Supreme Court's decision that he had not shown prejudice was unreasonable. On June 19, 2014, the United States District Court for the District of Kansas denied the habeas petition. *Mattox v. McKune*, No. 12-3121-SAC, 2014 WL 2772977 (D. Kan. 2014) (unpublished opinion). On November 28, 2014, the Tenth Circuit Court of Appeals denied his claim of appealability. *Mattox v. McKune*, 588 Fed. Appx 833 (10th Cir. 2014) (unpublished opinion).

On July 28, 2015, Mattox filed his present pro se K.S.A. 60-1507 motion, his third such motion, with the district court. The district court summarily denied Mattox's motion, holding that Mattox's first claim—his counsel was ineffective for failing to obtain a psychological evaluation and by failing to argue that he could not have made a knowing and intelligent waiver of his right to counsel because he was under a schizophrenic episodic attack—did not have merit because Mattox could not show that the error would prejudice him. The district court did not specifically address whether Mattox's

postconviction counsel erred in his federal habeas petition and denied his remaining constitutional claims.

Mattox timely appeals.

## DID THE DISTRICT COURT ERR IN SUMMARILY DISMISSING MATTOX'S K.S.A. 60-1507 MOTION?

A district court has three options when reviewing a K.S.A. 60-1507 motion:

> "'(a) determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (b) determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held after appointment of counsel. If the court then determines there is no substantial issue, the court may deny the motion; or (c) determine from the motion, files, records, or preliminary hearing that there is a substantial issue requiring an evidentiary hearing.'" *Hayes v. State*, 307 Kan. 9, 404 P.3d 676, 678-79 (2017) (quoting *Wahl v. State*, 301 Kan. 610, 617, 344 P.3d 385 [2015]).

The standard of review on appeal depends upon which option the district court chose. When the district court summarily denies a K.S.A. 60-1507 motion, as occurred here, we conduct an unlimited review of the record to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. See *Wahl*, 301 Kan. at 614.

To be entitled to relief under K.S.A. 60-1507, the movant must establish by a preponderance of the evidence that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of

6

the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2017 Supp. 60-1507(b); see Supreme Court Rule 183(g) (2018 Kan. S. Ct. R. 223).

> "'A movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.' Once a movant satisfies that burden, [the court is] 'required to grant a hearing, unless the motion is "second" or "successive" and seeks similar relief.' [Citations omitted.]" *Solas-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

The State argues we should not reach the merits of Mattox's K.S.A. 60-1507 motion on appeal because it is successive. A court is not required to entertain a second or successive K.S.A. 60-1507 motion from the same prisoner. K.S.A. 2017 Supp. 60-1507(c); *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013). The movant is "presumed to have listed all grounds for relief, and a subsequent motion need not be considered in the absence of a showing of circumstances justifying the original failure to list a ground." 296 Kan. 898, Syl. ¶ 2.

Supreme Court Rule 183(d) (2018 Kan. S. Ct. R. 225) states:

> "(d)    **Successive Motions**. A sentencing court may not consider a second or successive motion for relief by the same movant when:
>     (1)    the ground for relief was determined adversely to the movant on a prior motion;
>     (2)    the prior determination was on the merits; and
>     (3)    justice would not be served by reaching the merits of the subsequent motion."

However, "trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal." Supreme Court Rule 183(c)(3) (2018 Kan. S. Ct. R. 224).

Exceptional circumstances have been defined as "'unusual events or intervening changes in the law which prevent a movant from reasonably being able to raise all of the trial errors in the first post-conviction proceeding. [Citation omitted.]'" *State v. Kelly*, 291 Kan. 868, 872, 248 P.3d 1282 (2011) (quoting *Woodberry v. State*, 33 Kan. App. 2d 171, 175, 101 P.3d 727, *rev. denied* 278 Kan. 853 [2004]). Exceptional circumstances can include ineffective assistance of counsel claims. *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009).

### A.      *Ineffective Assistance of Trial and Appellate Counsel*

Mattox does not assert that the district court erred in summarily denying his claims; rather, he largely reprises the same arguments he raised before the district court, namely that trial and appellate counsel were ineffective in failing to argue that his mental health at the time of his questioning by the detectives was not stable—Mattox describes it as having a "schizophrenic episodic attack"—and thus he could not make a knowing and voluntary waiver of his rights. Mattox claims counsel should have sought a psychological examination of his mental state. Mattox also repeats his argument that his counsel was ineffective for failing to argue that his statements should have been excluded.

To show deficient performance of counsel, a criminal defendant must establish that

> "'(1) counsel's performance was deficient, which means counsel made errors so serious that counsel's performance was less than that guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense, which requires showing counsel's errors were so serious they deprived defendant of a fair trial. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.' [Citations omitted.]" *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015) (quoting *Robertson v. State*, 288 Kan. 217, 225, 201 P.3d 691 [2009]).

As the State correctly asserts, Mattox recognized in his motion to the district court that his present K.S.A. 60-1507 motion was successive. Mattox acknowledged the State would argue that it was successive, but he argued that he could bring the claims now despite his prior motions because the alleged errors occurred after the previous motions. But Mattox does not assert any reasons why exceptional circumstances justify our consideration of his third K.S.A. 60-1507 motion on appeal.

For example, he does not explain why he failed to assert in *Mattox II* his claim that he was unable to waive his constitutional rights due to an alleged schizophrenic episodic attack. Mattox asserts that during a conversation at the Shawnee County jail his trial counsel told him that he may suffer from posttraumatic stress disorder. However, because Mattox provides no timeframe for this conversation or citation to the appellate record, we "presume that a factual statement made without a reference to volume and page number has no support in the record on appeal." See Supreme Court Rule 6.02(a)(4) (2018 Kan. S. Ct. R. 35).

Mattox also includes statements from officers involved in his case who stated that he was acting "distraught, erratic, disoriented, and paranoid" around the time he made his statements to the police. Here, Mattox supports each statement with a record citation. However, Mattox also asserts that he was first diagnosed with schizophrenia disorganized type 295.10 in 2002. Although Mattox provides an exhibit showing his diagnosis was recently amended in 2013 or 2014 to schizophrenia disorderly paranoid type, Mattox provides no explanation why he could not have asserted this argument based on his 2002 diagnosis for schizophrenia in his 2007 K.S.A. 60-1507 motion. Accordingly, we find Mattox has waived and abandoned his exceptional circumstances argument, meaning we

9

are procedurally barred from considering the merits of his claim. See *Kelly*, 291 Kan. at 872-73.

Even if we could consider the merits of Mattox's ineffective assistance of counsel claims, we would agree with the district court that Mattox cannot show that he was prejudiced by counsel's failure to argue that his statements to Topeka police detectives should have been excluded. In *Mattox II*, 293 Kan. at 731, the Kansas Supreme Court "conclude[d] beyond a reasonable doubt that the exclusion of those statements would have had no impact on the outcome of his trial."

B.      *Ineffective Assistance of Postconviction Counsel*

Next, Mattox asserts that his postconviction counsel was ineffective in failing to argue to the United States District Court for the District of Kansas that the Kansas Supreme Court decision in *Mattox II* was based on a factual error—that Mattox voluntarily handed the written statement he prepared at the Lawrence jail to the Topeka police detectives in the interview room when the detectives instead illegally retrieved the statement. The *Mattox II* decision states:  "Mattox did contend in this appeal, especially in oral argument, that his written statement should have been inadmissible because he signed it and *handed* it to detectives after he had reinvoked his *Miranda* rights." (Emphasis added.) 293 Kan. at 727.

At the outset, we find this claim is not successive because Mattox could not have raised an ineffective assistance of postconviction counsel claim in his previous K.S.A. 60-1507 motion or on direct appeal. Although Mattox does not assert that exceptional circumstances apply, an ineffective assistance of counsel claim may suffice. *Rowland*, 289 Kan. at 1087.

10

Assuming without deciding that Mattox has a right to the effective assistance of counsel in habeas postconviction proceedings before the federal court and that he has the right to assert an ineffectiveness claim against such federal counsel before us, we again conclude that any such alleged failure of federal counsel would not have prejudiced Mattox.

As our Supreme Court previously explained in *Mattox II*:

"*We accept for argument's sake* that Mattox did reinvoke his *Miranda* rights during the early stages of his interview with Topeka detectives. Based on that assumption, those statements would be inadmissible. In addition, Mattox agreed in that interview to show detectives where his gun had been discarded; after he did so, FBI tests showed that it was indeed the murder weapon. So Mattox argues that the gun and the tests showing that it was the murder weapon would also have been excluded under the present *assumption*.

"But even without the videotaped statements to the detectives—and even the murder weapon that Mattox led detectives to—overwhelming evidence proved both of the charges against Mattox: aiding and abetting both second-degree murder and the criminal discharge of a firearm." (Emphasis added.) 293 Kan. at 727.

The Supreme Court concluded

"that the only evidence that would have been excluded had Mattox succeeded in the argument that he had reinvoked his *Miranda* rights were his statements to the detectives. Even if those statements should have been excluded from evidence, Mattox has failed to persuade us that he would have been successful in his initial appeal. Indeed, we conclude beyond a reasonable doubt that the exclusion of those statements *would have had no impact on the outcome of his trial given the other evidence against him*. Mattox has thus failed to meet his burden to show prejudice under the *Strickland* test." (Emphasis added.) 293 Kan. at 730-31.

11

Therefore, it is immaterial whether Mattox handed his written statement to the detectives or whether they illegally obtained the written statement from him. The outcome of the trial would have been the same.

C.     *Remaining Constitutional Claims*

Finally, Mattox asserts that he invoked his right to counsel under the Sixth Amendment to the United States Constitution and *Nix v. Williams*, 467 U.S. 431, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984).

> "The Sixth Amendment under the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence.' The Sixth Amendment right to counsel attaches on the filing of formal charges, indictment, or information; on arraignment; or on arrest on warrant and arraignment thereon. *State v. Appleby*, 289 Kan. 1017, 1044, 221 P.3d 525 (2009) (citing *Brewer v. Williams*, 430 U.S. 387, 398, 97 S. Ct. 1232, 51 L. Ed. 2d 424, *reh. denied* 431 U.S. 925, 97 S. Ct. 2200, 53 L. Ed. 2d 240 [1977]).

> "The Sixth Amendment right to counsel is offense specific, cannot be invoked once for all future prosecutions, and does not attach to offenses that have not been charged. *Appleby*, 289 Kan. at 1044, 221 P.3d 525; *State v. Pennington*, 276 Kan. 841, 845, 80 P.3d 44 (2003). Therefore, ""[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached are, of course, admissible at the trial of those offenses.' [Citation omitted.]"' *Appleby*, 289 Kan. at 1044, 221 P.3d 525 (citing *McNeil v. Wisconsin*, 501 U.S. 171, 111 S. Ct. 2204, 115 L. Ed. 2d 158 [1991])." *State v. Gamble*, 44 Kan. App. 2d 357, 362, 236 P.3d 541 (2010).

The facts of the case show that Mattox first invoked his right to counsel under *Miranda* when he was being held on a charge unrelated to the murder charge and had not yet been charged in the Lane case. *Mattox I*, 280 Kan. at 474-80; *Mattox II*, 293 Kan. at 724. Therefore, Mattox was not subject to Sixth Amendment protection at that time;

instead, Mattox was subject to Fifth Amendment protection, which is not offense specific. See *Gamble*, 44 Kan. App. 2d at 364. Accordingly, we agree with the district court that Mattox did not invoke his Sixth Amendment right to counsel.

Mattox also argues that under *United States v. Patane*, 542 U.S. 630, 124 S. Ct. 2620, 159 L. Ed. 2d 667 (2004), the physical evidence obtained based on statements he made to detectives in violation of his *Miranda* rights would be inadmissible. In *Mattox II*, 293 Kan. at 729, our Supreme Court reached the opposite conclusion:

> "We did not reach the issue [in *Mattox I*] because we separately concluded—with Mattox's attorney not pressing the argument that Mattox had reinvoked his *Miranda* rights—that the videotaped statements were admissible. Given that ruling, there was no cause in Mattox's earlier appeal to address the State's *Patane* argument, and we declined to do so. Since then, relying on *Patane*, we have held in another case that physical evidence that comes to light as a result of a custodial interrogation held in violation of the *Miranda* rule need not be suppressed. Here, the admission of Mattox's gun and the FBI ballistics-test results do not require the presentation of any of Mattox's statements that were arguably made after he had reinvoked his *Miranda* rights. We therefore conclude that even if Mattox did reinvoke his *Miranda* rights, neither the gun nor the ballistics-test results would have been suppressed. [Citations omitted.]"

The district court did not err in summarily denying Mattox's third K.S.A. 60-1507 motion.

Affirmed.